Filed 4/8/15

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065080 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD246343) |
| RAUL ERNESTO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.A.

# INTRODUCTION

A jury found Raul Ernesto Rodriguez guilty of robbery (Pen. Code, § 211)[1] (count 1) and evading arrest with reckless driving (Veh. Code, § 2800.2, subd. (a)) (count 2). The jury also found true a prior strike conviction allegation (§§ 667, subds. (b)-(i), 1170.12, 668, and 1192.7, subd. (c)), and a prior serious felony conviction allegation (§§ 667, subd. (a)(1), 668, and 1192.7, subd. (c)).

The trial court sentenced Rodriguez to a total term of 16 years four months in prison. On count 1 (robbery), the court sentenced Rodriguez to the middle term of five years, doubled to 10 years due to the strike prior. On count 2 (evading arrest with reckless driving), the court sentenced Rodriguez to eight months, doubled to 16 months due to the strike prior, to be served consecutively to the term on count 1. In addition, the court imposed a consecutive five-year term for the serious felony enhancement.

On appeal, Rodriguez claims that the trial court erred in failing to instruct the jury sua sponte on the defense of duress, and in failing to stay execution of the sentence for evading arrest with reckless driving pursuant to section 654. In the unpublished portion of this opinion, we reject Rodriguez's jury instruction claim. In the published portion, we reject his section 654 claim. We affirm the judgment.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2013, Rodriguez entered a bank and demanded that several tellers give him cash. Rodriguez said that he had a gun, and placed his hand into a backpack he was carrying in a manner that suggested he had a gun. The tellers gave Rodriguez several thousand dollars. After obtaining the money, Rodriguez fled the building and got into the back of a waiting vehicle. The driver of the vehicle drove off.

While Rodriguez was in the bank, a bank employee called 911. After Rodriguez fled, bank employees provided the 911 operator with a description of the getaway vehicle. San Diego Police Officer Daniel Brent was approximately two blocks from the bank when he received a call concerning the robbery. Officer Brent began to drive to the bank. As Officer Brent drove toward the bank, a dispatcher advised him that a police helicopter had spotted a vehicle matching the description of the vehicle used in the robbery getting on Highway 163 northbound at Kearny Villa Road. Officer Brent began to drive toward that location. Shortly thereafter, while Officer Brent was driving eastbound on Highway 52, he encountered the suspects' vehicle. Officer Brent requested assistance. Two other police units responded, and they, together with Officer Brent, stopped the suspects' vehicle.

The driver and a passenger got out of the vehicle and were taken into custody. Rodriguez climbed from the back seat into the driver's seat, and drove off. Officer Brent and several other police units gave pursuit. Rodriguez began driving at high speeds, at

times reaching approximately 90 miles per hour, making unsafe and abrupt lane changes, and honking at other cars. Rodriguez continued to attempt to escape even after driving over a spike strip and deflating his right front tire. The chase continued over several different highways until Rodriguez's vehicle began to smoke, lose oil, and ultimately became disabled.

After his vehicle came to a stop, officers ordered Rodriguez to exit the vehicle. Rodriguez did not comply with the command and instead, remained inside the vehicle. Rodriguez gestured to the officers as if he had a gun, spoke on his cell phone, and made an obscene gesture. After the officers fired pepper balls into the vehicle, Rodriguez got out and was taken into custody. Police recovered several thousand dollars taken in the robbery from the vehicle Rodriguez had been driving.

## III.

## DISCUSSION

A.   *The trial court did not err in failing to instruct the jury sua sponte on the defense of duress*

Rodriguez claims that the trial court erred in failing to instruct the jury sua sponte on the defense of duress. On appeal, we determine de novo whether the trial court had a sua sponte duty to instruct on a defense. (See *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424 (*Russell*).)

4

1. *Governing law*

   a. *A trial court's sua sponte duty to instruct on a defense*

It is well established that a trial court's "duty to instruct sua sponte arises when there is substantial evidence supportive of a defense that is not inconsistent with the defendant's theory of the case." (*People v. Barraza* (1979) 23 Cal.3d 675, 691, italics omitted, citing *People v. Sedeno* (1974) 10 Cal.3d 703, 715-716.) " 'Substantial evidence is "evidence sufficient 'to deserve consideration by the jury,' not 'whenever *any* evidence is presented, no matter how weak.' " ' " (*People v. Wilson* (2005) 36 Cal.4th 309, 331-332.) In determining whether there is substantial evidence to support an instruction concerning a defense, an appellate court views the evidence in the light "most favorable to [the] defendant." (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.)

   b. *The defense of duress*

In *People v. Petznick* (2003) 114 Cal.App.4th 663, 676-677, the court outlined the law governing the defense of duress:

> "Section 26 describes the duress defense: 'All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.' In other words, the defense of duress negates the intent or capacity to commit the crime charged. Defendant needs to raise only a reasonable doubt that he acted in the exercise of his free will. [Citation.] In order to show that his act was not the exercise of his free will, defendant must show that he acted under an immediate threat or menace. [Citation.] 'Because of the immediacy requirement, a person committing a crime under duress has only the choice of imminent

5

death or executing the requested crime. The person being threatened has no time to formulate what is a reasonable and viable course of conduct nor to formulate criminal intent. The unlawful acts of the person under duress are attributed to the coercing party who supplies the requisite mens rea and is liable for the crime. [Citation.]' "

" 'The defense of duress . . . requires that [a] threat or menace be accompanied by a direct or implied demand that the defendant commit the criminal act charged.' " (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567.) The defense may also apply when a defendant commits a crime in order to prevent imminent harm to a third person. (*People v. Pena* (1983) 149 Cal.App.3d Supp. 14, 23–25.)

2.      *Application*

Rodriguez contends that the trial court was required to instruct the jury sua sponte on the defense of duress in light of witness testimony that, during the robbery, Rodriguez stated that " 'his children were dying,' " "his child was dying the hospital, and he needed money for his child," his " 'kids were held hostage,' " and his " 'children are going to die.' "

The witnesses' testimony regarding Rodriguez's statements clearly does not constitute evidence sufficiently substantial to support a duress defense. The testimony did not indicate that anyone had threatened Rodriguez or a third person to get him to commit the robbery, much less that he or another person was subjected to an "immediate threat or menace." (*People v. Petznick*, *supra*, 114 Cal.App.4th at p. 676.) Accordingly, we conclude that the trial court did not err in failing to instruct the jury sua sponte on the defense of duress.

6

B.      *The trial court did not err in failing to stay execution of the sentence for evading arrest with reckless driving pursuant to section 654*

Rodriguez contends that the trial court erred in failing to stay execution of the sentence for evading arrest with reckless driving pursuant to section 654.[2]

1.      *Governing law and standard of review*

Section 654 provides in relevant part:  "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability."  (*Neal v. State of California* (1960) 55 Cal.2d 11, 20 (*Neal*).)

In *Neal*, the Supreme Court interpreted the statutory prohibition contained in section 654 to apply to cases in which a defendant engages in an indivisible course of conduct with a single objective that violates several different penal statutes.  (See *Neal, supra,* 55 Cal.2d at p. 19.)  The *Neal* court explained the manner by which a court is to determine whether a defendant has acted pursuant to an indivisible course of conduct:

---

[2]      Although Rodriguez failed to raise a section 654 claim in the trial court, "[i]t is well settled . . . that [a] court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654."  (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.)  Accordingly, Rodriguez is not precluded from raising a section 654 claim for the first time on appeal. (See *People v. Flowers* (1982) 132 Cal.App.3d 584, 589 ["The question of the applicability of Penal Code section 654 was not raised at the sentencing hearing, but the absence of any objection does not obviate our duty to review the section 654 question"].)

7

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.

"Thus in *People v. Logan* [(1954)] 41 Cal.2d 279, 290, defendant, who chose to commit robbery by first knocking out his victim with a baseball bat and then taking his valuables was convicted of both robbery and assault. We reversed the assault conviction on the ground that the double punishment violated section 654. . . .[3] [¶] In the instant case the arson was the means of perpetrating the crime of attempted murder just as the malicious use of explosives was the means for perpetrating the attempted murder in *People v. Kynette* [(1940) 15 Cal.2d 731], and the assault with the baseball bat was the means of committing robbery in *People v. Logan*. The conviction for both arson and attempted murder violated Penal Code section 654, since the arson was merely incidental to the primary objective of killing Mr. and Mrs. Raymond. Petitioner, therefore can only be punished for the more serious offense, which is attempted murder." (*Neal, supra,* at pp. 19-20.)

"If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' "

(*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)

In reviewing the trial court's implicit finding that section 654 does not apply, we determine only whether there is substantial evidence to support the trial court's finding.

(See *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

---

3       Although the *Neal* court reversed the assault conviction, "Modern practice is to stay the sentence on one count pending completion of the sentence on the second." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 189, fn. 8.)

2.      *Application*

Although the trial court did not explicitly mention section 654, the trial court explained its decision to order that the sentence on count 2 be served consecutively to the sentence on count 1 as follows:

> "I order that [the term on count 2] shall be served consecutively.  I do that find it is a separate act, separate from the [section] 211 [robbery].  He . . . wasn't escaping, he had gone much . . . further than escaping.  In fact, at one point he stopped and then took off again.  And then, of course, there . . . [was] a [Vehicle Code section] 2800.2, [subdivision] (a) [evading arrest with reckless driving]."

The trial court's implicit finding that Rodriguez had two distinct objectives in committing the robbery and then evading the police is supported by substantial evidence. The trial court could have reasonably found that the objective of the robbery was to obtain money from the bank, while the objective of the evading arrest with reckless driving was to avoid being caught by the police.

A finding that the defendant entertained two distinct objectives under these circumstances would be consistent with the manner by which the *Neal* court framed the essential section 654 inquiry.  The *Neal* court explained that where a defendant commits another crime as "the means of perpetrating the crime," section 654 applies.  (*Neal, supra*, 55 Cal.2d. at p. 20.)  Thus, where a defendant commits an assault as a means of committing a robbery, section 654 applies.  (*Neal, supra*, at pp. 19-20.)  Accordingly, section 654 applied in *People v. Logan*, *supra*, 41 Cal.2d at page 290, where the defendant "commit[ed] [a] robbery by first knocking out his victim with a baseball bat

9

and then taking his valuables."  (*Neal, supra*, at pp. 19 -20, discussing *Logan*.) In contrast, Rodriguez's act in evading arrest in this case was not the method by which he obtained the bank's money.  That is demonstrated by the fact that Rodriguez could have attained the objective of the robbery (obtaining the money) *without* evading arrest, if the police had not given chase.  The same cannot be said of the assault in *Logan*, which had the *same* objective as the robbery, namely, obtaining the victim's valuables.  In short, since a defendant does not evade arrest as a means of perpetrating a robbery, a trial court may reasonably find that a defendant who commits a robbery and evades arrest within the meaning of Vehicle Code section 2800.2, subdivision (a) acts with multiple objectives.

Further, the trial court's refusal to stay execution of sentence for the conviction for evading arrest with reckless driving is consistent with section 654's purpose of "insur[ing] that the defendant's punishment will be commensurate with his criminal liability."  (*Neal, supra,* 55 Cal.2d at p. 20.)  A defendant who engages in a high speed car chase following a robbery is surely more culpable than a defendant who immediately surrenders when encountered by the police.

Rodriguez contends that the trial court was required to stay execution of sentence for his conviction for evading arrest with reckless driving because his act of evading the police was merely incidental to his objective in committing the robbery.  In support of this contention, Rodriguez argues that the robbery was not complete at the time he committed the evading offense since he had not reached a "place of temporary safety." (Quoting *People v. Irvin* (1991) 230 Cal.App.3d 180, 185.)  Rodriguez's claim turns on

10

whether the so called "escape rule" applies in determining the applicability of section 654.

"Under the escape rule, as applied in the context of the felony-murder doctrine and certain other ancillary consequences of robbery, 'robbery is said to continue through the escape to a place of temporary safety, whether or not the asportation of the loot coincides with the escape.' " (*People v. Gomez* (2008) 43 Cal.4th 249, 256, fn. 5.)  The purpose of the escape rule is to measure the *duration* of a robbery, in order to determine whether a killing or some other act has occurred in the perpetration or commission of the robbery. (See *People v. Wilkins* (2013) 56 Cal.4th 333, 341 (*Wilkins*) [noting that the escape rule originated in the felony-murder context and stating that "the escape rule also has been extended to other contexts requiring proof that an act occurred in the commission of a crime—such as inflicting great bodily injury in the course of commission of a crime [citation], kidnapping for purposes of robbery [citation], and use of a firearm in the commission of a robbery"].)

However, whether an evading crime occurred during the commission of a robbery is not determinative of whether section 654 applies.  That is because it is well established that a defendant may harbor "separate and simultaneous intents" in committing two or more crimes, for purposes of section 654.  (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 272.)  Since determining whether section 654 applies does not turn on whether "an act occurred in the commission of a crime" (*Wilkins*, *supra*, 56 Cal.4th at p. 341), but rather, on whether a defendant entertained " 'multiple criminal objectives' " (*Harrison*,

11

*supra*, 48 Cal.3d at p. 335), we agree with those courts that have refused to apply the escape rule in determining the applicability of section 654. (See *People v. Nguyen*, *supra*, 204 Cal.App.3d at p. 193 [rejecting application of escape rule in determining whether section 654 applied and stating "legal fictions surrounding application of the felony-murder rule should have nothing to do with sentencing choices"]; *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 [rejecting application of escape rule in determining whether section 654 applied and stating "it cannot mean every act a robber commits before making his getaway is incidental to the robbery"].)[4]

Accordingly, we conclude that the trial court did not err in failing to stay execution of the sentence for evading arrest with reckless driving pursuant to section 654.

---

[4] The Supreme Court has made clear that the escape rule should not be applied blindly in all contexts. For example, in *People v. Cooper* (1991) 53 Cal.3d 1158, the court declined to apply the escape rule in the scope of determining aider and abettor liability for robbery. The *Cooper* court reasoned, "[A]lthough we agree that the escape rule serves the legitimate public policy considerations of deterrence and culpability in the context of determining certain ancillary consequences of robbery, the rule does not similarly serve those considerations in the context of determining principal liability as an aider and abettor of a robbery." (*Id.* at p. 1167.)

IV.

DISPOSITION

The judgment is affirmed.

                                               _____

                                                                AARON, J.

WE CONCUR:

_____

                     NARES, Acting P. J.

_____

                        McINTYRE, J.