Filed 5/18/16  P. v. Townsend CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DANDRAY LEE TOWNSEND,<br><br>　　　Defendant and Appellant. | B258676<br><br>(Los Angeles County<br>Super. Ct. No. MA061557) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed with directions.

　　　James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General of California, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

————————————

On December 5, 2013, around 10:30 p.m., Eusebio Garcia (Garcia) drove to Lancaster to meet Latisha Wong (Wong) in order to collect money she owed him. When Garcia picked Wong up, she told him that she first wanted him to drive her to a nearby store in order to purchase cigarettes. After Garcia agreed, Wong directed him to follow a particular route, ostensibly to the store. When they drove past two pedestrians, she convinced him to stop the car in order for her to talk with them. As Garcia stopped the car, the two pedestrians, D'andray Lee Townsend (Townsend) and Jeffrey Lamont Johnson (Johnson), were walking on the sidewalk. Townsend and Johnson, each armed with firearms, then entered the car; Wong immediately exited the car and ran away. Townsend and Johnson then robbed Garcia of $300 cash, his wallet containing his bank card, and his phone. Townsend and Johnson next forced Garcia out of his car and drove away. Subsequently, using the stolen bank card, they withdrew $200 from Garcia's bank account. On July 22, 2014, a jury convicted Townsend of kidnapping during the course of a carjacking, kidnapping to commit robbery, carjacking, robbery, criminal threats, and assault with a semiautomatic firearm.

On appeal, Townsend raises three issues: (1) that the evidence at trial failed to corroborate Wong's testimony, as required by Penal Code section 1111[1]; (2) that in imposing sentence on count 4 (robbery) and in imposing a consecutive sentence on count 1 (kidnapping during the course of a carjacking), the trial court violated section 654 prohibiting multiple punishments for the same act; and (3) that evidence did not support the prior prison term sentencing enhancement related to Townsend's July 16, 2010 conviction.

On the first issue, we hold that sufficient evidence corroborated Wong's testimony, particularly the evidence of Townsend's jailhouse calls to his girlfriend and to his brother instructing them to intimidate Garcia not to testify against Townsend.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Townsend's attempts to conceal his involvement in the charged crimes reveal a consciousness of guilt that corroborated Wong's testimony.

Further, we find no error in the trial court's application of section 654 in this case, because Townsend harbored separate criminal objectives when he robbed Garcia of his personal items as alleged in count 4 and when he kidnapped Garcia during the course of carjacking Garcia's vehicle as alleged in count 1. We conclude that avoidance of detection and conviction for the robbery was the objective of the conduct alleged in count 1. As Townsend's criminal objective for robbery differed from his objective for the kidnapping during the course of a carjacking, Townsend is separately punishable on his convictions for counts 1 and 4.

Because the trial court failed to specify on the record which two of three prior prison terms underlie sentencing enhancements, we do not reach the third issue raised by Townsend. Thus, we order a limited remand for the trial court to make the necessary on-the-record statements to indicate the disposition of Townsend's three prior prison term allegations, i.e., the trial court must either impose or strike each prior prison term enhancement and if the trial court strikes an enhancement then it must set forth the reasons for doing so.

Pursuant to Government Code section 68081, this court has received and considered supplemental briefing from the parties on a fourth issue: whether sufficient evidence supported the jury's true finding that Townsend committed the charged crimes in affiliation with a criminal street gang. After reviewing the parties' supplemental briefing, we conclude that the record amply supported the jury's true finding.

## BACKGROUND

### I. Facts of the case

After meeting on Facebook and communicating online, Garcia and Wong met in-person for the first time in November 2013 when she invited him to attend a party hosted at her house; at the party, Garcia loaned Wong $50. On December 4, 2013, Garcia texted Wong about her repaying the money to him; on December 5, 2013, around 7:00 p.m., Wong agreed to meet Garcia to repay him the $50. Claiming that she had only $100 bills

3

and that she needed change to pay her rent, Wong asked Garcia to bring $200 in $20 bills to the meeting.[2]  At or about 10:30 p.m., Garcia drove to the meeting place at the intersection of Avenue H-8 and Date Avenue in Lancaster; when Wong entered Garcia's car, Garcia immediately asked her about the $50 she owed him.  Wong responded that she first wanted to purchase cigarettes at a nearby store at the intersection of Avenue H and 10th Street.

When Garcia began driving on Avenue H-8 toward the store, Wong directed him to drive in the opposite direction and to turn right on Date Avenue.  Garcia drove past Johnson and Townsend, who were on foot.  Wong told Garcia that Johnson and Townsend were her brother and his friend, respectively; she directed Garcia to pull over to where they were walking; Garcia refused.  Representing that Johnson and Townsend were also headed to the store to purchase cigarettes and that she could obtain money from them for the purchase, Wong again attempted to persuade Garcia to stop his car.  Still wary of Johnson and Townsend approaching his car, Garcia stopped the car but told Wong to walk to them, to get the money from them, and then to return to the car.

However, when Garcia stopped the car, Wong yelled to the two men to come to the car; Johnson walked to the driver side door and opened it.  He placed a gun against Garcia's ribs, forced Garcia to move to the front passenger seat, and sat behind the wheel of the car.  Also armed with a gun, Townsend entered the car through the driver side rear door and struck Garcia over the head with the weapon; meanwhile, Wong exited the car and ran away.[3]

As Johnson drove Garcia's car with Garcia in the front passenger seat and Townsend in the back seat, Johnson and Townsend demanded that Garcia give them his money and personal items; they threatened to kill him if he failed to comply.  Garcia gave

---

[2] The logic of Wong's request is elusive, as one cannot make $50 in change with only $100 and $20 bills.

[3] The record is silent on the specific types of firearms that Johnson and Townsend carried.

4

them the $200 in cash that Wong had asked him to bring, his wallet containing his bank card plus an additional $100 in cash, and his phone.

After driving about a mile, Johnson and Townsend demanded that Garcia get out of his car; they again threatened to kill him if he refused to obey. Garcia exited the car near the intersection of Avenue H-8 and the Sierra Highway; he ran toward Avenue I. At an unknown time later in the day, using Garcia's stolen bank card, Townsend and Johnson withdrew an additional $200 from Garcia's account.[4] Garcia later recovered his vehicle abandoned in a nearby park close to the intersection of Avenue H-8 and the Sierra Highway.

During the ensuing police investigation, Garcia identified Johnson as the person who had driven his car away; although Garcia described some physical characteristics of the other perpetrator, Garcia could not identify Townsend as the second assailant. Wong, however, identified Johnson and Townsend as the two perpetrators.

Multiple persons gave statements to the police or testimony at trial that both Johnson and Townsend are members of the Bloods on Point gang and that they both have tattoos depicting their gang affiliation. During the police investigation, Wong told the police that she believed both men are Bloods on Point gang members and that they associate with other members of that gang. At trial, the investigating officer, Dale Parisi, testified that Townsend's tattoos—"B dog for life" on his forearm, "B.O.P. style," "B.O.P." on his left bicep, and "57" on his right wrist—and the B.O.P. star tattoo on Johnson's stomach manifested their respective affiliations with the Bloods on Point gang. Officer Parisi also testified that two field identification cards from street interviews with Townsend confirmed that Townsend self-identified as a gang member. At trial, the prosecution's gang expert, Officer Daniel Welle, opined that in light of Johnson's self-identification as a gang member in field interviews and his tattoos depicting a B.O.P. star on his stomach, "B" and "on point" on his face, and "57" and "FS" on his left forearm,

---

[4] Garcia had attached his personal identification number to his bank card.

Johnson is a member of the Bloods on Point gang. Relying on Townsend's tattoos, the field identification cards mentioned by Officer Parisi, and Townsend's admission of his gang member status to Officer Welle's partner when Townsend had suffered an arrest on an unrelated matter, Officer Welle opined that Townsend is a Bloods on Point gang member. Officer Welle also confirmed that the charged crimes occurred within the territory of the Bloods on Point gang.

## II. Procedural history

On March 27, 2014, the People filed a six-count information charging Townsend with various crimes related to the December 5, 2013 incident. Count 1 alleged kidnapping during the course of a carjacking, a serious felony in violation of section 209.5, subdivision (a); count 2 alleged kidnapping to commit robbery, a serious felony in violation of section 209, subdivision (b)(1); count 3 alleged carjacking, a serious and violent felony in violation of section 215, subdivision (a); count 4 alleged robbery, a serious and violent felony in violation of section 211; count 5 alleged criminal threats, a serious felony in violation of section 422, subdivision (a); and count 6 alleged assault with a semiautomatic firearm, a serious felony in violation of section 245, subdivision (b). The information also charged that, as to all counts, Townsend committed the offenses in affiliation with a criminal street gang, that, as to all counts, Townsend committed the offenses while personally using a firearm, and that Townsend had three prior prison terms.

On July 22, 2014, the jury convicted Townsend on all counts and found true the gang allegations, the firearm allegations, and the prior prison term allegations. On August 28, 2014, in furtherance of justice pursuant to section 1385, the trial court dismissed count 3 (carjacking) as a lesser included offense of count 1 (kidnapping during the course of a carjacking). The trial court selected count 4 (robbery) as the base term and imposed a five-year upper term plus two 10-year terms for the gang enhancement and firearm enhancement, plus two one-year terms for two of Townsend's three prior prison terms. However, the court did not delineate on the record which specific prior prison terms were the bases of the one-year terms. The court imposed a consecutive sentence on

count 1 (kidnapping during the course of a carjacking): a 25 year to life term plus a 15-year term and a 10-year term for the gang and firearm enhancements, respectively. The court stayed imposition of sentence on the other counts; the court's aggregate sentence totaled 52 years to life.

## DISCUSSION

### I. Sufficient evidence corroborated Wong's testimony.

During the police investigation, the police interviewed Wong several times about the relevant events that occurred on December 5, 2013, and her version of the events was generally similar to Garcia's version of the events. Wong recounted that she had borrowed $50 from Garcia, that he had sent her a text message asking for repayment of the money, and that they had agreed to meet on December 5, 2013 near the intersection of Avenue H-8 and Date Avenue in Lancaster. She further described that when Garcia arrived at the meeting place, she entered Garcia's car, asked him to make a U-turn, and told him to drive near her friends who were walking to a neighborhood store. As Garcia and Wong drove down Date Avenue, Wong rolled down her window and asked her friends—Johnson and Townsend—for money to purchase cigarettes. Johnson then approached the stopped vehicle, went to the driver side door, produced a firearm, and told Garcia to move to the front passenger seat of the car. Townsend also approached the vehicle and produced a firearm. Wong then exited Garcia's car and ran away.

Wong identified Johnson as the driver: she referred to Johnson by his street names "J-man" and "Juice," described his physical appearance, and showed to Officer Parisi a photograph of Johnson posted on Facebook; she stated that Johnson's first name is Jefferson. Wong identified Townsend as the second assailant: she described to police his physical appearance and other personal information about him; further, Wong identified Townsend in a six-pack photographic lineup.

Wong also reported to the police that Johnson and Townsend are members of the Bloods on Point gang and that she was afraid that if she testified against them they would retaliate against her with violence. She also told the police that Bloods on Point gang

7

members had already started fights with her boyfriend because she had been talking to the police about the December 5, 2013 incident.

At trial, when the prosecution called Wong as its first witness, Wong claimed that she suffered from amnesia caused by a surgical procedure and that she had no memory of any events occurring before January 2, 2014, including the relevant events that occurred on December 5, 2013 as well as her statements to police about those events. Following Wong's brief testimony, the prosecutor called Officer Parisi who recounted to the jury Wong's statements during her police interviews, wherein she described the relevant events of December 5, 2013.

The trial court instructed the jury on accomplice liability: the court informed the jury that it had the responsibility to determine whether Wong was an accomplice, and that if it found that Wong was an accomplice, it would then have to determine whether sufficient evidence corroborated her statements. Post trial, during a hearing on this accomplice testimony issue, the court specified that the recordings of Townsend's jailhouse telephone calls "provide the sufficient corroboration connecting him to the crime here."

On appeal, Townsend argues that Wong was an accomplice to his crimes and that no evidence corroborated her testimony; thus, the requirements imposed by section 1111 have not been met.

Section 1111 defines an "accomplice" as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (§ 1111.) Townsend argues the prosecutor "conceded" Wong's status as an accomplice during his closing argument, and thus, her status is "undisputed." While Townsend misleadingly quotes only portions of the prosecutor's statements and omits other portions in order to present the prosecutor's statements out of context, we need not dwell on whether sufficient evidence supports a conclusion that Wong was an accomplice.

Substantial corroborative evidence connects Townsend to the crimes charged in this case. An accomplice's in-court testimony or extrajudicial statements must be

"corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." (§ 1111; *People v. Rodriguez* (1994) 8 Cal.4th 1060, 1132–1133.) Corroborating evidence can be entirely circumstantial and "may be slight and entitled to little consideration when standing alone." (*People v. Santo* (1954) 43 Cal.2d 319, 327 (*Santo*); *People v. Nelson* (2011) 51 Cal.4th 198, 218.) It need not corroborate every fact to which an accomplice testifies; it need not by itself establish every element of the crime. (*Santo*, at p. 327; *Nelson*, at p. 218.) It is sufficient that the evidence tends in some degree to implicate the defendant or "'tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.'" (*Santo*, at p. 327; *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 304.) Relevant in this case, evidence of a defendant's attempt to conceal his involvement in a crime implies a consciousness of guilt that can constitute corroborating evidence. (*People v. Avila* (2006) 38 Cal.4th 491, 563; *Santo*, at p. 327.)

While in jail, Townsend made multiple phone calls to his girlfriend and to his brother, instructing them to intimidate Garcia into not testifying at trial; Townsend relied on code words to conceal his plans from the police whom he knew were recording the calls. The police have access to a system that records all jailhouse telephone calls: officers can search for specific telephone calls via the inmate's booking number, the inmate's first or last name, the credit card used to place a call, or the telephone number that the inmate calls.

Officer Parisi searched for jailhouse calls made by Townsend based on his booking number and discovered that he had made several calls while in jail. Based on the telephone number and corresponding address of the call recipients and Officer Parisi's familiarity with Townsend's girlfriend's voice from his prior interviews of her, Officer Parisi determined that the recipients of Townsend's calls were Townsend's girlfriend, Emerald Grant, and Townsend's brother, Brian Wilson. At trial, the jury heard audio recordings of portions of Townsend's telephone calls and received written transcripts of the corresponding portions of the conversations.

For example, after the first day of trial, Townsend directed his girlfriend to find

9

Garcia through Wong's Facebook page in order to intimidate Garcia from testifying against Townsend. He first stated with urgency, "I really really really need you to go on [] that nigger PDL page." His girlfriend responded that she thought "PDL" stands for Pasadena Denver Lanes and that she understood him to be directing her to "go on PDL face page." On the same call, Townsend repeated to his girlfriend, "I need you to go on PDL page and [] look for that boy you feel me?" Townsend told his girlfriend that he had instructed his brother Brian to do the same. Townsend explained to his girlfriend that complying with his request to find and to intimidate Garcia would "make all the problems go away," specifically "the problem I'm in right now," referring to the ongoing trial. Townsend also acknowledged to his girlfriend that he was speaking to her in "code" in order to conceal his plans from the police, who he knew were recording the conversation: "you the smartest person for the job, you the best candidate to get that done and, but damn I wish I had a way of telling you blood the way that I need to tell you but I can't tell you over this, over this thing." When Townsend's girlfriend responded that she did not know any "PDL," Townsend expressly identified Wong by her first name: "Latisha." In response, Townsend's girlfriend confirmed Wong's identity by naming Wong's boyfriend Scrappy: "You shoulda just said Scrappy or something." Townsend again acknowledged to his girlfriend that he was trying to conceal his plans from the police who were listening on the call: "Well I mean I tried to give you some type of clues like . . . ." and "[a]ll of that can be backtracked if they, if they, you feel me?"

Officer Parisi later testified that "PDL" referred to the Pasadena Denver Lanes gang, that Wong associated with the PDL gang, that Wong's boyfriend Scrappy is a member of the PDL gang, and that Wong and Garcia had met through one of Wong's Facebook pages.

Earlier that same evening, Townsend also instructed his brother to find Garcia through Wong's Facebook page in order to prevent Garcia's testimony against him: "[T]his is the most important thing in the world right now. You know what I mean? Oh everything, drop everything. That's what I'm trying to tell you. Go on PDL's page, you feel me, and [] look up that [] boy. You feel me? That boy is on PDL's page." Using

code words to refer to the ongoing trial and Garcia's testimony against him, Townsend directed his brother to intimidate Garcia not to testify against him at trial: "[W]ith that boy on PDL's page, you feel me, the bike's still gonna move. But if you, if, if, if you can holler at him, then you could, then the bike is gonna stop." He explained his view that without Garcia's testimony, the prosecutor's case against him could not succeed: "I'm thinking like this right? You need the victim there to say that he got robbed. Because according to Redmond [Townsend's attorney] they can't go on. They can't [] go any further without him. They can't [], uh, the jury can't [] go onto deliberations without him being there."

These recorded conversations demonstrated Townsend's attempts to conceal his involvement in the charged crimes and revealed a consciousness of guilt that corroborated Wong's testimony. Moreover, Garcia's testimony proved factually consistent with Wong's testimony and thus provided additional corroboration for her testimony. Townsend's admissions that he and Johnson are both Bloods on Point gang members and that they had seen each other several hours before the crimes occurred, also corroborated Wong's testimony.

Townsend's reply brief neglects to address why the substantial evidence detailed above was not sufficient to corroborate Wong's testimony; instead, he argues that no evidence corroborated Wong's identification of him as the person who entered Garcia's car through the rear door. However, evidence need not corroborate every fact of Wong's testimony; the corroborating evidence need only tend to connect Townsend with the crimes in such a way as to satisfy the jury that Wong is telling the truth. (See *Santo*, *supra*, 43 Cal.2d at p. 327; *People v. Gonzales*, *supra*, 52 Cal.4th at p. 304.) As discussed above, sufficient evidence corroborates Wong's testimony.

## II.    We remand the matter for the trial court to identify on the record the specific prior prison terms on which the trial court imposes one-year enhancements.

The People's information alleged that Townsend suffered three prior prison terms: a July 16, 2010 conviction for bringing contraband into a California Youth Authority facility; a December 6, 2011 conviction for possession of a controlled substance; and a

July 31, 2012 conviction for possession of a firearm by a felon. Though the jury found true these allegations concerning Townsend's three convictions, at sentencing, the trial court imposed enhancements for only two of the three prior prison terms: "On top of everything, pursuant to Penal Code 667.5 subdivision (b), he is ordered to serve two consecutive one-year terms." The trial court failed to specify on the record on which of the three prior prison terms the trial court imposed the enhancements and on which of the three prior prison terms, if any, the trial court had stricken any enhancements. If the trial court did strike an enhancement, it failed to state its reasons for doing so.

The Penal Code statute requires that, for non-violent felonies, a trial court must impose a one-year enhancement for each prior prison term, though the trial court does retain the authority to strike such enhancements in furtherance of justice. (§§ 667.5, subd. (b), 1385, subd. (a).) When a defendant has multiple prior prison terms but a trial court fails to indicate the disposition of each prior prison term, we must remand for the trial court to specify on the record whether it imposes or strikes the enhancement for each prior prison term. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1553, 1561; *People v. Bradley* (1998) 64 Cal.App.4th 386, 390.) The People concede this point in their brief.

Therefore, we remand for the trial court to make the necessary on-the-record statements. As Townsend's argument that insufficient evidence supported a sentencing enhancement related to his July 16, 2010 conviction assumes that the trial court imposed one of the two sentencing enhancements for the prior prison term served pursuant to that conviction, we do not reach that issue because the accuracy of that assumption depends on the trial court's actions on remand.

III. **The trial court appropriately imposed punishments on both counts 1 and 4.**

At a hearing on this issue, the trial court explained its reasoning for imposing punishments on both count 1, kidnapping during the course of a carjacking, and count 4, robbery. It outlined the California Supreme Court law regarding how courts should apply section 654 and subsequently provided the following reasoning: "I agree that 654 applies to many of the counts here. But with regard to the carjacking and the kidnapping during the carjacking that complies with count 1[,] I think that that is a separate intent and

12

objective, than that of the robbery, which subsequently follows when the items are taken, other than the car from the victim in this case. And so that is why I do intend to sentence the defendant on count 1 and count 4. With respect to the other count 3 which I think gets completely dismissed, the other counts will be stayed pursuant to section 654. But I think it is appropriate to sentence on both count 1 and count 4."

Section 654 prohibits a trial court from imposing multiple punishments for the same act even though the same act violates multiple criminal statutes. (§ 654, subd. (a).) "The purpose of the protection against multiple punishment is to [e]nsure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State* (1960) 55 Cal.2d 11, 20.)

When a defendant's actions are a course of criminal conduct, to determine whether section 654 precludes multiple punishments, the test is to look at the defendant's criminal objective and intent. (See *People v. Beamon* (1973) 8 Cal.3d 625, 638–639.) When the defendant has multiple criminal objectives independent of each other, the course of conduct is divisible into separate acts such that the court may punish the defendant for each violation committed in pursuit of an independent criminal objective. (See *id.* at p. 639.)

After stealing someone's property, avoiding detection and conviction of that crime could be a separate criminal objective from the preceding criminal objective of taking property from someone else. (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1006; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657–1658.) For example, in *Rodriguez*, a defendant had two separate criminal objectives: when he robbed a bank, he had the criminal objective of obtaining money; when he subsequently drove off with the police in pursuit, he had the criminal objective of avoiding detection and conviction for robbing the bank. (*Rodriguez*, at p. 1006.) Similarly, the defendant in *Nichols* had two separate criminal objectives. (*Nichols*, at pp. 1657–1658.) When he kidnapped a driver for two hours and stole the driver's vehicle loaded with music equipment, his criminal objective was hijacking the vehicle. When he subsequently threatened the driver not to yell for help, the defendant's criminal objective became avoiding detection and conviction for

kidnapping the driver and stealing the driver's vehicle.

In applying section 654, the trial court determines each case on its own factual circumstances. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) As the trial court has broad latitude in making this factual determination, we do not reverse unless no substantial evidence supports the trial court's findings. (*Ibid.*)

Townsend first intended to rob Garcia of his personal items including his cash, his bank card, and his phone. After successfully taking Garcia's personal items, Townsend intended to avoid detection and conviction for the robbery by driving Garcia's vehicle away from the crime scene and subsequently abandoning the vehicle after successfully achieving flight. The trial court's ruling was therefore consistent with the purpose of section 654 to ensure the defendant's punishment was commensurate with his increased criminal liability. (See *People v. Rodriguez*, *supra*, 235 Cal.App.4th at p. 1006.)

Townsend's brief emphasizes that the robbery and the kidnapping during the course of the carjacking occurred "at the same time," but timing is not the definitive test for applying section 654. A defendant can have multiple criminal objectives simultaneously and be subject to punishment for each criminal objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1212; *People v. Nichols*, *supra*, 29 Cal.App.4th at p. 1658.) Further, while the robbery ended when Townsend and Johnson had successfully taken Garcia's personal items from him, the kidnapping during the course of the carjacking continued while they drove a mile with Garcia in the passenger seat and until they forced Garcia out of his car. The robbery and the kidnapping during the course of the carjacking had overlapping timeframes, not identical ones. In addition, contrary to Townsend's argument that avoiding detection and conviction can never be a separate criminal objective from the preceding criminal objective of stealing property, as explained above, our precedent has rejected this view. Having concluded that Townsend's arguments on appeal have no merit, we agree with the trial court that Townsend was properly subject to punishment on both counts 1 and 4.

14

**IV.    Substantial evidence supported the jury's true findings on the gang sentence enhancement allegations.**

We requested the parties to submit supplemental briefing addressing the issue of whether substantial evidence supported the jury's true findings on the allegation that Townsend committed the charged crimes "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)

The applicable standard of review is well settled:  In reviewing a challenge to the sufficiency of evidence to support an enhancement, the reviewing court must consider the evidence in the light most favorable to the judgment and presume the existence of every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*Ibid.*)  "Even if we might have made contrary factual findings or drawn different inferences, we are not permitted to reverse the judgment if the circumstances reasonably justify those found by the jury."  (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

In determining whether a defendant committed a crime "in association with" a gang, we look at, for example, whether the perpetrators "not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together."  (*Albillar*, *supra*, 51 Cal.4th at pp. 61–62.)  We also consider whether the perpetrators "relied on the gang's internal code to ensure that none of them would cooperate with the police and on the gang's reputation to ensure that the victim did not contact the police."  (*Id.* at p. 62.)  In *Albillar*, this reliance on the gang's reputation to prevent apprehension manifested in intimidation and warnings by gang affiliates toward the victim and her family that the victim "would suffer with her life" if the crime were reported to the police.  (*Id.* at p. 61.)

15

When determining whether a defendant committed a crime "for the benefit of" a gang, "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference." (*Albillar*, *supra*, 51 Cal.4th at p. 63.) Thus, benefit to the gang may be established by expert opinion that violent crimes by gang members "intimidate neighborhood residents who are, as a result, 'fearful to come forward, assist law enforcement, testify in court, or even report crimes that they're victims of for fear that they may be the gang's next victim or at least retaliated on by that gang. . . .'" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 354.) As *Vazquez* observed, "[t]his intimidation, obviously, makes it easier for the gang to continue committing the crimes for which it is known, from graffiti to murder." (*Ibid.*)

Similarly, in *People v. Hunt* (2011) 196 Cal.App.4th 811, the defendant and a fellow gang member drove to and robbed a restaurant; they admitted that they would use the proceeds of the robbery to pay for parking tickets. (*Id.* at pp. 814–815.) In affirming the jury's gang enhancement finding, the court relied on the expert's opinion that robbery is one of the primary activities of the gang, that "commission of violent crimes enhanced the gang's reputation in the community," and that gang members enhance their standing in the gang by committing robberies and assaults with deadly weapons. (*Id.* at p. 821.) Further, the court held the expert's testimony was not baseless or speculative in opining that "the perpetrators of this robbery would tell at least one other person in the neighborhood about what they had done and it would get around the neighborhood and enhance their reputation in the gang and the gang's status in the community." (*Ibid.*)

Here, the following substantial evidence supported the jury's verdict on the gang enhancement allegation. Townsend and Johnson were self-admitted members of the Bloods on Point gang; each had knowledge that the other was a fellow gang member; and each acted in concert in committing the crimes and in reliance on their gang's internal code that the other would not cooperate with the police. As reflected in his recorded jailhouse telephone calls, Townsend knew that Wong associated with the Pasadena Denver Lanes gang; as admitted to the police, Wong similarly knew that Johnson and Townsend were members of the Bloods on Point gang.

16

There was also evidence that the Bloods on Point gang engaged in intimidation to prevent Wong from testifying against Townsend at trial.  Before the trial, Wong reported to the police that Bloods on Point gang members had started fights with her boyfriend because she had been talking to the police about Johnson and Townsend's crimes.  Thereafter, during the trial, Wong claimed amnesia and did not testify against Townsend.  Such evidence supports the reasonable inference that the Bloods on Points gang sought to interfere with the prosecution against Townsend because of his membership in the gang, and because Townsend had committed the crime in affiliation with and for the benefit of the gang.

On the basis of this evidence, the prosecution's gang expert, Officer Welle, opined that Townsend committed the charged crimes for the benefit of and in association with a criminal street gang.  The prosecution asked Officer Welle to consider a hypothetical scenario mirroring the evidence presented at trial and asked his opinion as to whether the person in that scenario committed the crimes for the benefit of, at the direction of, or in association with a gang.  In forming his opinion, Officer Welle specifically relied on the facts stated in the hypothetical that two members of the same gang committed the crimes in concert, that they received money from the robbery, and that they committed the crimes in a public location within the gang's territory.

Officer Welle further surmised that the robbers committed the crimes for the benefit of the gang because residents of the area who may have witnessed the crimes would associate the robbers with the gang who controlled that neighborhood, the residents would then know that the gang committed street robberies and carjackings in that area, and thus the residents would be fearful of that gang—however, the record is devoid of evidence to support his conclusions.  Officer Welle further opined that the funds from the robbery would finance the gang members' daily expenses and that therefore the gang also received a financial benefit from the robbery.  Because the two gang members committed the crimes together and they both had active roles in

17

committing the crimes, Officer Welle also concluded that the two gang members committed the crimes in association with their gang.[5]  Again, no evidence at trial supported these conclusions.[6]

Contrary to Townsend's assertion, there is no requirement that a gang member call out the gang's name or slogan before committing a crime.  (See, e.g., *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1261.)  Such a requirement would provide an easy loophole for gang members to avoid the gang enhancement and effectively eviscerate the statutory requirement.  This is particularly true when the defendant has visible tattoos, as Johnson and Townsend do.  In *Galvez*, after the defendant and three or four of his companions began attacking another group of men, an off-duty sheriff who witnessed the attack called 911 on his cellphone.  (*Id*. at p. 1257.)  The group of attackers then began assaulting the off-duty sheriff and robbed him of his cellphone in order to stop him from reporting the crime.  (*Id*. at pp. 1257–1258.)  Affirming the jury's finding true that defendant committed the offenses of robbery, attempting to dissuade the witness, and assault, for the benefit of a gang, the court held, "Although no one called out the gang's name, the assailants' identity as Carpas gang members was obvious.  Appellant had the word 'Carpas' tattooed across his upper lip." (*Id*. at pp. 1256, 1261.)  Here, Townsend and Johnson have multiple gang tattoos in conspicuous places such as on the face and arms, and Wong was well aware that Townsend and Johnson were members of the Bloods on Point gang.

Contrary to Townsend's assertion, it was of no consequence that the victim is not

---

[5] We do not endorse Officer Welle's opinion that such evidence alone is sufficient to support a conclusion that the gang members committed the crimes in association with their gang.

[6] If Officer Welle's factually unsupported suppositions were the only testimonial support for the People's contention that Townsend and Johnson committed these crimes for the benefit of and in association with their gang, Townsend's challenge to the gang enhancement would be well taken.  However, as set forth herein, there is substantial, non-speculative evidence supporting the gang's connection to these crimes.

a gang member or that Townsend and Johnson did not commit the crime on rival gang territory, because gangs frequently commit crimes against innocent people on their own territory.  (See, e.g., *People v. Acuna* (2010) 182 Cal.App.4th 866, 877.)

Further, regardless of whether Garcia concretely knew of the perpetrators' gang membership, Wong associated with a gang and knew that both Townsend and Johnson were members of a gang.  A reasonable inference is that the increase to the reputation of the gang and the enhanced standing of Townsend caused by the offense in this case would be spread to others in the community by Wong, a member of the same community as the defendant.

The pivotal point is not whether reasonable minds might find differently on the question of whether Townsend acted in affiliation with a criminal street gang; the issue is whether substantial evidence supports this jury's finding.  It unequivocally does.  (See *Albillar*, *supra*, 51 Cal.4th at pp. 59–60; *People v. Perez*, *supra*, 2 Cal.4th at p. 1126.)

**DISPOSITION**

The matter is remanded to the superior court for resentencing in order for the superior court to either impose or strike each of Townsend's three prior prison term enhancements.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.