Filed 2/7/25  P. v. Martinez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL RAY MARTINEZ,<br><br>    Defendant and Appellant. | D083305<br><br><br>(Super. Ct. No. INF2101580) |


APPEAL from a judgment of the Superior Court of Riverside County, Jason L. Stone, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Warren J. Williams and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.


Daniel Ray Martinez appeals the judgment sentencing him to prison after a jury found him guilty of murder with a firearm enhancement and

possession of a firearm by a felon.  He contends the trial court erroneously refused to stay execution of the prison term imposed on the firearm possession conviction.  We affirm.

## BACKGROUND

Martinez and his girlfriend, Jessica Shelton, were visiting friends at the friends' house one night and got into an argument.  Martinez took Shelton's phone, said he was leaving her, and departed.  Javier Torres arrived later.  When Shelton borrowed someone else's phone to call Martinez and told him Torres was there, Martinez said "he wasn't coming back for [her] for sure."  About two hours later, Martinez returned to the friends' house, kicked in the front door, and entered the house.  He pointed a gun at Torres, fired three times, and fled.  Torres died from the gunshot wounds.

One of Martinez's friends who lived at the house found three bullet casings but no firearm on the floor of the room where Torres was shot, and threw the casings away.  Police searched Martinez's residence and vehicle but found no firearm.

The People charged Martinez with murder (Pen Code, § 187, subd. (a); subsequent section references are to this code) and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  They alleged that in committing the murder he personally and intentionally discharged a firearm causing death. (§ 12022.53, subd. (d).)  The People also alleged Martinez had a prior conviction that constituted a strike under the "Three Strikes" law.  (§§ 667, subds. (b)–(i), 1170.12.)

A jury found Martinez guilty of first degree murder and possession of a firearm by a felon, and found true the firearm enhancement allegation attached to the murder charge.  Martinez chose to have a court trial on the prior conviction allegation, and the court found the allegation true.

2

At the sentencing hearing, Martinez asked the trial court to strike the firearm enhancement (§ 12022.53, subd. (h)) or impose a lesser included one (*id.*, subd. (b)) and to stay execution of the prison term imposed on the conviction of possession of a firearm by a felon (§ 654). The prosecutor asked the court to impose the maximum prison term and not to stay execution of the term imposed on the firearm possession conviction. The trial court ruled section 654 did not require a stay. It explained: "The crimes themselves are predominantly independent of one another. They [have] different elements. They are completely unrelated. One has to do with a status of being a prohibited person, simply possessing the firearm. And the other has to do with actually using the firearm to kill another individual." The court sentenced Martinez to prison for 25 years to life for the murder conviction (§ 190, subd. (a)), doubled to 50 years to life based on the prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)); plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)); plus a consecutive term of 16 months for the conviction of possession of a firearm by a felon (§§ 18, subd. (a), 29800, subd. (a)(1)), doubled to 32 months based on the prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).

DISCUSSION

Martinez assigns as error the trial court's refusal to stay execution of the 32-month prison term imposed on the conviction of possession of a firearm by a felon. He contends that "because the evidence only showed a single indivisible course of conduct, in which [he] possessed the gun in order to shoot Mr. Torres, section 654 required a stay." We disagree.

Section 654, as pertinent here, provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be

3

punished under more than one provision." (*Id.*, subd. (a).) Our Supreme Court has construed this provision to limit punishment for multiple crimes if they arise out of the same act or omission or a course of conduct pursued with a single intent or objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) If the crimes were completed by a single physical act, the defendant may be punished for only one of the crimes. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) If the crimes involve multiple acts but were committed with the same intent or objective, the defendant also may be punished for only one of the crimes. (*Beamon*, at p. 637.) If the defendant had multiple intents or objectives that were not merely incidental to one another, he may be punished for crimes committed in pursuit of each intent or objective even though they shared common acts or were parts of an otherwise indivisible course of conduct. (*Id.* at p. 639.) Whether the defendant had a separate intent or objective for each crime is a factual question for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) On that issue, we review the trial court's express or implied finding for substantial evidence, consider the evidence in the light most favorable to the judgment, and draw every inference the trial court reasonably could have drawn. (*People v. Hicks* (2017) 17 Cal.App.5th 496, 515; *People v. Andra* (2007) 156 Cal.App.4th 638, 641–642.)

The courts have applied the rules stated above in various contexts to decide whether section 654 prohibits punishing a defendant for both unlawful possession of a firearm and another crime in which he used the firearm. If " 'the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper.' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22.) Thus, section 654 prohibits multiple punishment when the defendant obtained the

firearm during the crime in which he used it. (See, e.g., *id.* at pp. 13, 22 [defendant wrested revolver from highway patrol officer whom he shot]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 820, 821 [defendant struggled over gun with victim whom he shot].) But if " 'the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved.' " (*Bradford*, at p. 22.) Hence, "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1145 [defendant possessed firearm in vehicle before shooting at inhabited dwelling from vehicle]; see *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218 [§ 654 did not prohibit multiple punishment when defendant possessed deadly weapon before he entered store where he assaulted victim with weapon].) The statute also does not apply if the evidence shows the defendant possessed the firearm before, during, and after the crimes in which it was used. (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1413 (*Ratcliff*) [defendant possessed firearm before and after robberies in which he used it].)

In this case, the trial court found the two crimes were "predominantly independent of one another" based on separate intents The court stated possession of a firearm by a felon "has to do with the status of being a prohibited person, simply possessing a firearm," and murder "has to do with actually using the firearm to kill another individual." These statements are consistent with the case law. Commission of the crime of possession of a firearm by a felon "is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed

5

weapon. [Citation.] In other words, in the case here, [Martinez's] intent to possess the weapon did not import or include the intent to commit the [murder]." (*Ratcliff, supra*, 223 Cal.App.3d at p. 1414; see *Jones, supra*, 103 Cal.App.4th at p. 1147 [defendant's use of gun to shoot at inhabited dwelling "required a second intent *in addition* to his original goal of possessing the weapon"].)

Moreover, the record supports the conclusion that Martinez unlawfully possessed the firearm before and after the murder with separate intents. He must have intentionally had the gun under his control for at least part of the time between his departure from the friends' house after he argued with Shelton and his return several hours later when he used the gun to kill Torres. Since Martinez "arrived at the scene of [the murder] already in possession of the firearm," section 654 does not prohibit punishment for both crimes. (*People v. Jones, supra*, 103 Cal.App.4th at p. 1145.) The record also suggests Martinez continued to possess the firearm after the murder. Shell casings were found at the murder scene, but the firearm was not. When police searched Martinez's residence and vehicle, they found no firearm. A reasonable inference is that Martinez took the firearm with him after he shot Torres and hid or discarded it to escape detection. (Cf. *People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1006 ["the objective of the robbery was to obtain money from the bank, while the objective of the evading arrest by reckless driving was to avoid being caught by the police"].) "Multiple criminal objectives may divide those acts occurring closely together in time." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1565 (*Garcia*).) Where, as here, the defendant unlawfully possessed a weapon before, during, and after commission of another crime in which he used the weapon, section 654 does

6

not prohibit separate punishment for both crimes. (*Ratcliff, supra*, 223 Cal.App.3d at p. 1413.)

In urging us to reach a different conclusion, Martinez argues that "cases which suggest arriving at the scene of a crime already possessing a firearm can establish separate and distinct possession were incorrectly decided." He contends *People v. Jones, supra*, 103 Cal.App.4th 1139, read *Ratcliff, supra*, 223 Cal.App.3d 1401, "too broad[ly]" and "relied on opinions subsequently disavowed by the Supreme Court" in *People v. Jones* (2012) 54 Cal.4th 350.[1] We are not persuaded.

In *People v. Jones, supra*, 54 Cal.4th at page 357, the Supreme Court held section 654 prohibited separate punishment for possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public, when all three crimes were based on "a single possession or carrying of a single firearm on a single occasion." In the course of its analysis, the Supreme Court disapproved *People v. Harrison* (1969) 1 Cal.App.3d 115 and overruled *In re Hayes* (1969) 70 Cal.2d 604, both of which had permitted multiple punishment *for a single physical act* that violated multiple statutes. (*People v. Jones, supra*, 54 Cal.4th at pp. 354–358.) Although the Court of Appeal cited *Harrison* and *Hayes* in *People v. Jones, supra*, 103 Cal.App.4th at pages 1146–1148, it relied primarily on *Ratcliff, supra*, 223 Cal.App.3d 1401, and the facts that

---

[1]    The two cases titled *People v. Jones* concerned different defendants and crimes. The defendant in the Supreme Court was Jarvonne Feredell Jones, and the crimes at issue were possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. (*People v. Jones, supra*, 54 Cal.4th at p. 352.) The defendant in the Court of Appeal was Louis Willie Jones, and the crimes at issue were shooting at an inhabited dwelling and possession of a firearm by a felon. (*People v. Jones, supra*, 103 Cal.App.4th at p. 1141.)

*separate acts and separate intents* underlay the convictions of possession of a firearm by a felon and shooting at an inhabited dwelling to conclude section 654 did not prohibit punishing the defendant for both crimes. Our Supreme Court cited *People v. Jones, supra*, 103 Cal.App.4th 1139, as representative of "cases concerning how section 654 applies to a defendant who is convicted of possession of a firearm by a felon and of committing a separate crime with that firearm," and stated it "d[id] not intend to cast doubt on them." (*People v. Jones, supra*, 54 Cal.4th at p. 358, fn. 3.) This court and other Courts of Appeal have followed the reasoning of *People v. Jones, supra*, 103 Cal.App.4th 1139. (See, e.g., *People v. Venegas* (2020) 44 Cal.App.5th 32, 38; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1379; *Garcia, supra*, 167 Cal.App.4th at p. 1565.) We therefore conclude it remains good law and supports the trial court's decision that section 654 did not prohibit separate punishment for the two convictions in this case.

DISPOSITION

The judgment is affirmed.



IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


RUBIN, J.

9