Filed 6/15/22  P. v. Esquivel CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| |
|---|
| **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.** |

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D079885 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No.  F17902384) |
| STEVEN ROY ESQUIVEL, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County, F. Brian Alvarez, Judge.  Affirmed as modified.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Julie A. Hokans, and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Steven Roy Esquivel, Jr. of driving with a .08 percent blood alcohol content causing injury (Veh. Code, § 23153, subd. (b); count 1); driving under the influence causing injury (Veh. Code, § 23153, subd. (a);

count 2); leaving the scene of an accident involving permanent serious injury (Veh. Code, § 20001, subd. (b)(2); count 3); and misdemeanor resisting arrest (Pen. Code,[1] § 148, subd. (a)(1); count 4.)[2] The jury also found true that, as to counts 1 and 2, Esquivel personally inflicted great bodily injury on three separate victims (§ 12022.7, subd. (a)) and had a blood alcohol content of .15 percent or higher (Veh. Code, § 23578). In a separate proceeding, after waiving his right to trial, Esquivel admitted that he had suffered a prior driving under the influence conviction.

The court sentenced Esquivel to prison for 13 years, comprised of the following: for count 1, the upper term of three years, plus three consecutive three-year terms for the great bodily injury enhancement for each of the three victims; and one year for count 3. As to count 4, the court sentenced Esquivel to 364 days in jail. The court stayed Esquivel's sentence under count 2 pursuant to section 654. In addition to other fines and fees, the court imposed a $3,600 restitution fine (§ 1202.4, subd. (b)), a $3,600 parole revocation fine (§ 1202.45); a $160 court security surcharge fee (§ 1465.8, subd. (a)(1)), $120 court facility fee (Gov. Code, § 70373); and a $296 probation report fee (§ 1203.1b).

Esquivel appeals, contending the sentence imposed on count 2 should be stayed under section 654; the evidence is insufficient to support his conviction under count 4; and the case must be remanded so the court can hold an ability to pay hearing before imposing any fines, fees, and penalties.

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] The court granted the prosecutor's motion to dismiss the original count 4 (misdemeanor driving with a suspended license causing bodily injury; Veh. Code, § 14601.4, subd. (a)) and ordered count 5 to be renumbered as count 4.

While this appeal was pending, we granted Esquivel's request to file a supplemental brief wherein he argues that the probation report fee should be stricken under Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869), which repealed the statute authorizing the probation supervision fee (§ 1203.1b).

Also, we requested supplemental briefing regarding whether this matter must be remanded for resentencing under the recently amended section 654. The parties each provided supplemental briefs; both agreeing that remand on this issue is not required.

We determine Esquivel's arguments that the sentence for count 2 should be stayed under section 654 and the evidence was insufficient to support his conviction under count 4 are without merit. In addition, we conclude he has waived his challenge to the fees imposed. However, as the People concede, Esquivel is entitled to relief under Assembly Bill 1869 and the portion of the judgment requiring Esquivel to pay a probation report preparation fee must be vacated. In addition, as Esquivel and the People agree, there is no need to remand this matter back to the superior court to resentence Esquivel under revised section 654 because the sentence options under counts 1 and 2 were the same. In all other respects, the judgment is affirmed.

FACTUAL BACKGROUND

Prosecution

On April 23, 2017, Claudio M. was in front of his house when he saw Esquivel's red Infiniti speeding toward the street "like a flash," travelling between 60 and 70 miles an hour. Claudio then heard an explosion. At about this same time, sisters Crystal and Yesenia B. were in Crystal's silver Honda

3

along with their cousin, Jennifer L.[3] Claudio's neighbors, Raymond and Tabitha R., heard the collision out in front of their house; they saw Crystal's Honda in the bushes nearby and Esquivel's red car facing their house.

Raymond and Tabitha watched Esquivel get out of his car, take a few steps, then return to the vehicle and let a passenger out of the back seat. Both Esquivel and the passenger walked away in separate directions. Raymond and Tabitha got in their car, followed Esquivel, and contacted law enforcement to apprise them of his location as he continued to walk away. After following Esquivel for a few minutes, Raymond told Esquivel that he had to return to the scene. Esquivel responded, "Oh, okay," and turned around as if he would do so. Instead of returning to the accident scene, Esquivel ran into a nearby apartment complex and jumped over a wall. Raymond and Tabitha continued to watch for Esquivel until law enforcement arrived.

Numerous law enforcement officers participated in the manhunt for Esquivel. Fresno Police Officer Kristopher Keener brought his police dog to a nearby backyard to help in the search. Before entering the backyard, Keener spent about 30 minutes driving around the block and providing a "PA canine announcement" from the loudspeaker on his patrol car. The announcement advised that canine was being used and directed any fugitive in the area to surrender or risk being bitten by the canine. After repeatedly providing the advisement, Keener and other law enforcement officers began to search the backyard of a resident who reported someone hiding in her backyard. The canine then found Esquivel hiding near the fence line.

---

[3] It is undisputed that Crystal, Yesinia, and Jennifer were severely injured in the accident.

4

When Detective Michael Aguilar first observed Esquivel, he commanded him to get on his knees and show the officers his hands. Other officers spent 40 to 50 seconds trying to put Esquivel under arrest, but he refused to comply. Rather, and in contradiction of the officers' instructions, Esquivel stood up, took "a bladed stance," and ignored the officers' instructions to put his hands on his head. Esquivel appeared to begin complying with the detective's instructions to walk toward them with his hands in the air.

But when Esquivel was about 15 feet from Aguilar, Esquivel again defied the detective's instructions and dropped his hands to his waistband. Esquivel then raised his hands again, but turned half-way around so that his right side was facing the officers. Esquivel put his left hand toward his waistband, and the officers did not know if he had a weapon.

For officer safety, Keener released his canine to assist the officers in apprehending Esquivel. The dog bit Esquivel's leg and pulled him to the ground so that officers could safely take Esquivel into custody. As he placed Esquivel in custody, Aguilar could smell "a strong odor of alcohol coming from [Esquivel's] breath."

During a search of Esquivel's car, officers found two, empty 25-ounce Bud Light beer cans.

A forensic toxicologist analyzed Esquivel's blood and determined that he had a blood alcohol content of .15 or .16.

Defense

Diana P. and his mother testified on Esquivel's behalf. Diana testified that Esquivel and his uncle had dinner at her house with her family around the day of the collision. When they left Diana's home, Esquivel's uncle was driving. Esquivel's mother testified that she saw her son around 7:00 or 7:30

5

on the night of the incident with his uncle, Jacinto E.  The next morning, Esquivel's mother went to look for Jacinto and noted that he was bruised on his forehead and arms as though he had been in a car accident.

DICUSSION

I

Section 654

A.  Esquivel's Contentions

Esquivel contends the trial court erred by imposing a one-year sentence on count 3 (leaving the scene of an accident causing severe and permanent injury) because the offense arose from a single event (driving while intoxicated) and was closely related in time and space to that single event.  In addition, the parties agree that this matter does not need to be remanded to allow Esquivel's sentence to be reconsidered under the recent amendment to section 654.

B.  Sentence for Count 3

At the time of Esquivel's sentencing, section 654 provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, former subd. (a).)

" '[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." ' "  (*People v. Capistrano* (2014) 59 Cal.4th 830, 886.)  In addition to precluding multiple punishments for a single act, section 654 also precludes multiple punishments for an indivisible course of conduct.  (*People v. Hester* (2000) 22 Cal.4th 290, 294; *People v. Tarris* (2009) 180 Cal.App.4th 612, 626.) " ' "Whether a course of criminal conduct is divisible and therefore gives rise

6

to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' " (*Capistrano*, at p. 885.)

Whether a defendant had multiple intents or objectives is a question of fact for the sentencing court (*People v. Coleman* (1989) 48 Cal.3d 112, 162), and its findings will be upheld on appeal if supported by substantial evidence. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698.) "We review the trial court's determination in the light most favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Below, the prosecution argued that section 654 should not apply to count 3 because count 1 and count 3 consisted of discrete acts, with the first act consisting of Esquivel driving while impaired and causing a collision, and the second act consisting of him leaving the scene. In contrast, defense counsel argued that section 654 should apply because the two acts were "closely intertwined" and occurred "closely within time[.]" After considering arguments as well as the evidence adduced at trial, the court determined that section 654 did not apply to count 3. In reaching this conclusion, it explained:

> "So, the Court, accordingly, would find that there are separate intents and objectives here with regards to Count Three. Even though the offenses occurred very close in time, that is the collision and then the failure to render aid by running away from the scene, the Court would note that the intent objective here tells it and the evidence and shows it that Mr. Esquivel's intent was to evade, get away and not render assistance to the people whom he gravely injured."

Nonetheless, Esquivel argues that the charges in his case all arose from a single act or objective—driving under the influence of alcohol at a high rate of speed and causing an accident resulting in bodily injury. He points out

had there been no accident, he could not have fled the scene.  He therefore argues that his leaving the scene was simply part of an indivisible course of conduct that does not allow for multiple punishments.  We disagree.

The court reasonably found that the crimes were different acts motivated by different objectives:  Esquivel had a general intent when he negligently drove a motor vehicle with greater than a .08 percent blood alcohol content and caused injury; and he had a separate and specific intent of intentionally leaving the scene of the accident without rendering aid as required by law.  Indeed, Esquivel could have committed the driving of the vehicle with at least a .08 percent blood alcohol content without also leaving the scene of an accident before providing assistance.  The fact that Esquivel's acts in furtherance of his escape may have occurred contemporaneously with his driving under the influence does not alter this conclusion "because it is well established that a defendant may harbor 'separate and simultaneous intents' in committing two or more crimes, for purposes of section 654." (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1007 [rejecting application of the "escape rule," under which robbery is said to continue until robber reaches temporary safety, to section 654].)

Further, count 3 involved conduct that is not always criminal.  Vehicle Code section 20001 targets "not the hitting but the running."  (*People v. Campbell* (2017) 12 Cal.App.5th 666, 674.)  " 'The gravamen of a [Vehicle Code] section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.' " (*People v. Harbert* (2009) 170 Cal.App.4th 42, 59.)  This is entirely different from driving under the influence with at least a .08 percent blood alcohol content, which is always a crime.  This is especially true because the latter

8

could have been committed without the former.  And there was substantial evidence to support the trial court's finding of separate intents.

Finally, the trial court's decision is consistent with the purpose of section 654.  The purpose of section 654 is to ensure that a defendant's punishment is commensurate with his culpability.  (*People v. Correa* (2012) 54 Cal.4th 331, 341.)  If multiple punishments were prohibited in cases such as this, there would be no incentive for a person who drives while under the influence of alcohol and causes injury to stop and render aid as required by Vehicle Code section 20001.  "In fact, noncompliance would be rewarded.  A defendant would suffer no greater criminal liability if he took his chances on escaping than if he stopped and rendered aid.  Our Legislature could not and did not intend such an absurd result." (*People v. Butler* (1986) 184 Cal.App.3d 469, 474.)  As such, the trial court did not err in imposing a one-year sentence for count 3.

### C.  Amended Section 654

Effective January 1, 2022, section 654 was amended pursuant to Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) to provide the trial court with the discretion to choose the count for which it imposes punishment rather than requiring the trial court to select the count with the longest potential term of imprisonment.  Specifically, section 654 now provides in relevant part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions." (§ 654, subd. (a).)

Here, the court determined that counts 1 (Veh. Code, § 23153, subd. (a)) and 2 (Veh. Code, § 23153, subd. (b)) arose from the same acts, and thus, it sentenced Esquivel under count 1 and stayed count 2 per section 654. Revised section 654 now allows the superior court to exercise discretion in

9

choosing which of the two counts to select for punishment rather than requiring the greatest potential term of imprisonment.  However, both counts 1 and 2 provide the same sentencing range (16 months, two years, or three years).  (See Veh. Code, § 23554; *People v. Toure* (2015) 232 Cal.App.4th 1096, 1102.)  As such, remand to allow the court to exercise its new discretion under revised section 654 would have no impact.[4]  We will not order an idle act.  (See *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 904 [remand is improper if it would "be an idle act and 'a waste of ever-more-scarce judicial resources' "].)

## II

## RESISTING ARREST

Esquivel argues that substantial evidence does not support his conviction for resisting arrest.  We disagree.

"The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find [defendant] guilty beyond a reasonable doubt." (*People v. Barnes* (1986) 42 Cal.3d 284, 303.)  "In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.]  . . . . '[O]ur task . . . is twofold.  First, we must resolve the issue in the light of the *whole record . . . .*

---

4  We concur with the parties' conclusion that the revised version of section 654 applies retroactively to non-final cases.  (See, e.g., *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308 [" 'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not' "].)

Second, we must judge whether the evidence of each of the essential elements . . . is *substantial* . . . .' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) Substantial evidence in the criminal context is evidence that is "reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Id.* at p. 578.) It is immaterial whether we would have drawn those same inferences (*People v. Solomon* (2010) 49 Cal.4th 792, 811-812); our job is not to reweigh the evidence or reevaluate witness credibility (*People v. Jones* (1990) 51 Cal.3d 294, 314). "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the [lawful] performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]" (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.) While the statute does not "criminalize[ ] a person's failure to respond with alacrity to police orders" (*People v. Quiroga* (1993) 16 Cal.App.4th 961, 966), "physical resistance, hiding, or running away from a police officer have been found to violate section 148" (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329 (*Muhammed*). Evidence of willful resistance and failure to comply with orders also supports a violation of section 148. (*In re J.C.* (2014) 228 Cal.App.4th 1394, 1400.)

Here, Esquivel argues that the evidence shows that he cooperated with the commands of law enforcement, but he did so "slowly." He further points

11

out that he had been involved in a car accident and was under the influence of alcohol. Esquivel emphasizes that he complied with the officers' commands to come out from behind the bushes and raised his hands while doing so. He admits that he dropped one of his hands on several occasions, contrary to what the officers were asking him to do. Essentially, he argues he was complying with the officers' instructions and simply "dropp[ed] his hand on one or more occasions to his waist[,]" which he contends does not violate section 148.

In making his argument that substantial evidence does not support his conviction for resisting arrest, Esquivel predominately presents the evidence in light favorable to the defense, drawing inferences from that evidence that support his position. Yet, in conducting a substantial evidence review, as discussed *ante*, we must look at the record in a light most favorable to the judgment. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Considering the record in this manner, we conclude that substantial evidence supports Esquivel's conviction under section 148, subdivision (a).

After fleeing from the scene of the accident, Esquivel hid from officers and refused to comply with their commands. Moreover, this was not a brief encounter where Esquivel could have been confused. Rather, Keener testified that he circled the neighborhood of the house where Esquivel was hiding for 30 minutes. He repeatedly provided canine announcements and directed Esquivel to surrender. Nonetheless, Esquivel continued to ignore officer commands even after they found him hiding in the yard. And officers struggled for 40 to 50 seconds to arrest Esquivel.

Although he began to comply by standing up and showing his hands, Esquivel subsequently twice defied the officers' orders. First, he took "a bladed stance," and ignored the officers' instructions to put his hands on his

12

head. Second, just before Keener released his canine, Esquivel again put his left hand near his waistband. The officers did not know whether Esquivel possessed a weapon and was reaching for it. Put differently, the act of Esquivel reaching for his waistband on two occasions potentially jeopardized officer safety. Further, at the point Esquivel was arrested, officers had been directing Esquivel to surrender for more than 30 minutes.

In *Muhammed*, *supra*, 95 Cal.App.4th 1325, the court listed the typical types of physical actions comprising section 148 violations: "physical resistance, hiding, or running away from a police officer." (*Muhammed*, at p. 1329.) In the instant matter, there was substantial evidence that Esquivel concealed himself for a lengthy period of time despite the officers' orders to come out and surrender. Thereafter, once the officers commenced their search in the backyard, Esquivel failed to submit to the officers' attempts to take him into custody. And even after Esquivel began to comply with the officers' commands, he twice dropped his hand to his waistband. At the time, Esquivel had not been searched and officers did not know whether he had a weapon concealed on his person.

Against this backdrop, we determine that the evidence does not simply indicate that Esquivel was not acting with alacrity, as he urges, but he failed to comply with repeated orders after a prolonged concealment. Such actions or inaction supported a conclusion that Esquivel delayed and obstructed the officers in the discharge of their official duty. Therefore, a reasonable inference could be drawn from the evidence that Esquivel "willfully delayed the officers' performance of duties" by refusing to comply with the repeated requests that he come out and surrender and instead hiding behind the tree

13

until found by a police dog. (See *Muhammed*, *supra*, 95 Cal.App.4th at p. 1330.) In short, substantial evidence supported Esquivel's conviction for resisting arrest.

## III

## THE FINES, FEES, AND PENALTIES

At sentencing, the trial court imposed a $3,600 restitution fine under section 1202.4, a $160 court operations fee under section 1465.8, a $120 criminal conviction assessment under Government Code section 70373, and a $296 fee for preparation of the probation report under former section 1203.1b.[5]

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Esquivel contends that imposition of these various fines, fees, and assessments, without a determination of his ability to pay, violated his constitutional right to due process. He contends his case should be remanded to allow the trial court to determine whether he has the ability to pay these amounts. Yet, as the People point out and Esquivel concedes, he did not object to the imposition of any of these fines or request an ability to pay hearing below. Accordingly, as we explain, we conclude Esquivel forfeited the claimed *Dueñas* error.

*Dueñas* involved an indigent, disabled, and homeless mother of young children who, due to illness, did not complete high school and subsisted on public aid. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160-1161.) Dueñas objected on due process grounds to the trial court's imposition of various fines and fees. (*Id.* at p. 1162.) "The court rejected Dueñas's constitutional

---

[5] The court also ordered victim restitution under section 1202.4, subdivision (f) with the amount to be determined at a later time. Esquivel does not challenge the imposition of victim restitution in the instant appeal.

14

arguments that due process and equal protection required the court to consider her ability to pay these fines and assessments . . . ." (*Id.* at p. 1163.) In reversing, the Court of Appeal in *Dueñas* observed, "Imposing unpayable fines on indigent defendants is not only unfair, it serves no rational purpose, fails to further the legislative intent, and may be counterproductive." (*Id.* at p. 1167.) The court therefore held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Id.* at p. 1164.) The *Dueñas* court also held that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*)

The Courts of Appeal have reached different conclusions regarding the substantive merits of the *Dueñas* opinion[6] as well as the question of whether a defendant forfeits any claim of error by failing to raise the issue in the trial

---

[6] For example, the courts in *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted November 26, 2019, S258946, and *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 disagreed with *Dueñas*, whereas the court in *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-656 followed *Dueñas*. In addition, our high court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted November 13, 2019, S257844, wherein this court distinguished and did not follow *Dueñas*. We need not address the validity of *Dueñas* given our conclusion here that Esquivel forfeited his claim of error.

15

court.[7]  Here, we find forfeiture based on the fact that Esquivel had the ability to object to the $3,600 restitution fine under section 1202.4—even before *Dueñas* was decided—but failed to do so.  (See § 1202.4, subds. (b) & (d) [the court may consider the inability of the defendant to pay any fine above the statutory minimum amount of $300].)  Where a statutory basis to object based on inability to pay exists, but a defendant fails to assert such a claim, the claim is forfeited.  For example, in *Gutierrez*, this court held that a defendant who fails to object to a restitution fine above the statutory minimum forfeits any ability-to-pay argument.  (*Gutierrez*, *supra*, 35 Cal.App.5th at p. 1033.)  We reasoned that the statute governing imposition of restitution fines "expressly permitted such a challenge" even before *Dueñas*.  (*Gutierrez*, at p. 1033.)  The *Dueñas* decision does not compel a different conclusion on the issue of forfeiture in such circumstances.  (*Ibid.* ["[E]ven if *Dueñas* was unforeseeable (a point on which we offer no opinion), under the facts of this case [defendant] forfeited any ability-to-pay argument regarding the restitution fine [above the statutory minimum] by failing to object."].)  The same is true here, where Esquivel had the statutory right to request that the trial court consider his ability to pay the restitution fee, which was above the statutory minimum (§ 1202.4, subd. (d)), but failed to do so.  By failing to object to this fee, or seek an ability to pay hearing before the court's imposition of the fee, Esquivel forfeited his challenge on appeal.

---

[7]     For example, the courts in *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 (*Gutierrez*), *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154-1155, and *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 found forfeiture, but the courts in *People v. Johnson* (2019) 35 Cal.App.5th 134, 137-138, *People v. Castellano* (2019) 33 Cal.App.5th 485, 489, and *People v. Jones* (2019) 36 Cal.App.5th 1028, 1033 did not find forfeiture.

Except for victim restitution, Esquivel's remaining fines and fees were mandatory regardless of ability to pay. (See *Dueñas, supra,* 30 Cal.App.5th at pp. 1164, 1170.) But he plainly could have challenged about 79 percent of the total—$3,300 of $4,156—based on ability to pay. Presumably, if he would struggle to pay the full amount, objecting to 79 percent would be both significant and rational. (See, e.g., *Gutierrez, supra,* 35 Cal.App.5th at p. 1033.) For this reason, we conclude he forfeited his challenge to all the fines and fees assessed.

IV

THE PROBATION REPORT PREPARATION FEE

As discussed *ante*, the trial court imposed a probation report preparation fee under section 1203.1b. Effective July 1, 2021, Assembly Bill 1869 " 'eliminate[d] the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and . . . eliminate[d] all outstanding debt incurred as a result of the imposition of [identified] administrative fees.' " (*People v. Greeley* (2021) 70 Cal.App.5th 609, 625 (*Greeley*).) Assembly Bill 1869 repealed and amended statutes that apply to certain fines and fees imposed in cases that were pending on appeal when the legislation became effective. (*People v. Clark* (2021) 67 Cal.App.5th 248, 252 (*Clark*).)

As applicable here, Assembly Bill 1869 amended the Penal Code by adding section 1465.9, which states in relevant part: "On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section . . . 1203.1b, . . . as [that section] read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing th[at] cost[ ] shall be vacated." (§ 1465.9, subd. (a); *Clark, supra,* 67 Cal.App.5th at p. 259; *Greeley, supra,* 70 Cal.App.5th at p. 625.)

17

The parties agree, and we concur, that the statutes enacted by Assembly Bill 1869 apply to the probation report preparation fee imposed pursuant to former section 1203.1b and is unenforceable and uncollectable, and the portion of the judgment imposing those costs must be vacated.

Accordingly, we vacate the portion of the judgment imposing the $296 probation report preparation fee.

DISPOSITION

We vacate the portion of the judgment imposing any fees under former section 1203.1b.  In all other respects, the judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

18