Filed 10/2/25  P. v. Jordan CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TONY DONELLE JORDAN,<br><br>    Defendant and Appellant. | B340243<br><br>Los Angeles County<br>Super. Ct. No. 24IWCF00068 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Altus W. Hudson, Judge. Reversed in part, affirmed in part, and remanded with instructions.

Ryan Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Tony Donelle Jordan was convicted by a jury of three felonies: assault with force likely to produce great bodily injury (GBI assault; Pen. Code,[1] § 245, subd. (a)(4); count 1); vandalism causing $400 or more in damage (§ 594, subd. (b)(1); count 3); and assault with a deadly weapon (§ 245, subd. (a)(1); count 4). The trial court sentenced him to an aggregate term of five years eight months in state prison, calculated as follows: four years for assault with a deadly weapon; one year for GBI assault; and eight months for vandalism. (See maj. opn., fn. 3, *post*.)

Jordan appeals his conviction for GBI assault on two grounds: (1) that the evidence was insufficient to show he used force likely to produce great bodily injury; and (2) the trial court erred in failing to instruct the jury on the lesser included offense of simple assault. We disagree with the former but agree with the latter and give the People the option to retry Jordan subject to proper instructions or accept a reduction in the conviction to misdemeanor simple assault.

Jordan also asserts the trial court should have applied section 654 to stay punishment for all but one of his convictions because they were all committed in furtherance of a single objective. We agree section 654 applies to the convictions for assault with a deadly weapon and vandalism but disagree that it also applies the conviction for GBI assault.

---

[1]     Undesignated statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

The primary victim in this case is Jordan's mother, Yvonne B.,[2] who was about 62 years old at the time of the incident in question. She lives in a second-floor apartment in Inglewood with her daughter Destiny B. and two of Jordan's children. At the time of the incident, Jordan was about 32 years old and about six feet tall. He did not, and was not allowed to, live at Yvonne's apartment. He sometimes visited but his visits did not always go "so great," to the point that police had to be called on occasion. His convictions stem from one such visit.

Around noon on January 26, 2024, Yvonne and Destiny returned to the apartment from running errands and found Jordan waiting nearby. Yvonne and Destiny tried to walk into the apartment without communicating with him, but he followed them up the stairs. Yvonne told him he could not come inside. She and Destiny left him at the threshold and locked him out. Jordan stayed outside and shouted to be let in. He threatened to break down the door, break the window, and " 'mess up the house,' " but did none of these things.

About an hour later, Yvonne passed Jordan a plate of hot food through the door. He rejected it but demanded keys to a car she no longer had—a Nissan that was recently involved in a wreck. Yvonne responded she did not have those keys or any keys that belonged to him, but he continued to insist she give him keys. She retreated into the apartment to get dressed for her shift as a security officer at a bank.

---

[2] We refer to the victim and other witness in this case by their first names and last initials only. (Cal. Rules of Court, rule 8.90(b)(4) & (b)(10).)

Once dressed in her work uniform, Yvonne headed down to the street where she had two cars parked: a Nissan she had bought to replace her wrecked car; and a Toyota she had rented from Enterprise after the wreck. Jordan was waiting by the Toyota, continuing to ask her for keys to a car. She continued to rebuff his requests.

As Yvonne was standing on the driver's side of the Toyota preparing to leave, Jordan picked up a landscaping brick from the neighbor's property and threw it through the Toyota's front passenger window. Yvonne implored him to stop. He ignored her and, without saying another word, methodically broke every window on the car (and some other parts) while Yvonne waved her arms and cried for help. Destiny came outside to see what was happening.

When Jordan threw a brick at the Toyota's back window, Yvonne was standing at the front of the car. The brick broke the window then ricocheted over the top and towards Yvonne. She ducked and it passed her without hitting her. She then called the police.

After Jordan finished with the Toyota, he reapproached Yvonne and again demanded car keys. She tucked them in her pocket and said she had no keys. Jordan then grabbed her by the arms trying to get the keys and they "started tussling."

When Jordan first grabbed Yvonne "it didn't hurt" and she was not scared. She was "just angry," "concerned," and "shocked [he was] doing this to [her]." She managed to hit him a few times. As they continued to tussle, she felt he was "trying to throw [her] down or push [her] or something." She felt "a burning sensation on [her] arm" as he was "tossing [her] back and forth." She managed to stay upright by "kind of turn[ing] or push[ing] away

from him." She did not fall but at one point her left foot "kinda lifted" off the ground.

All of the pushing and "tossing . . . back and forth" "moved" Yvonne and pinned her against a metal fence. From Destiny's perspective, Jordan was trying to "sling" Yvonne on the ground when she was pushed against the fence. With Yvonne against the fence, Jordan tore her pants pockets open, took the keys, and walked off. Police detained him soon thereafter a short distance away. They had to use force to wrest the keys from his grip.

From being pushed into the fence, Yvonne sustained scrapes on her elbows that hurt for "a day or two." She was not otherwise injured.

Jordan was charged with the three counts on which he was convicted, as well as a fourth that was dismissed for insufficiency of the evidence.

Jordan represented himself at trial. He did not request a jury instruction on simple assault if the jury did not agree he committed GBI assault. In his closing argument he suggested the assault charges were baseless, going so far as to argue he "didn't touch" Yvonne. But at the same time, he invited jurors to "find me guilty" and argued that "they" had not presented evidence he "used force . . . to likely cause GBI." After deliberating for about two and a half hours, the jury found him guilty on all counts.

The trial court revoked Jordan's propria persona status at sentencing because he had refused to speak at a posttrial hearing on his priors. His counsel failed to object to the proposed sentence on the grounds that section 654 applied to one or more of his convictions. She only asked that Jordan be placed on probation

instead of committed to prison. The court sentenced him to state prison for each count as detailed, *ante*.[3]

This appeal followed.

## DISCUSSION

### I. Substantial Evidence Supports Jordan's Conviction for GBI Assault

The jury convicted Jordan of GBI assault (§ 245, subd. (a)(4)) for manhandling Yvonne after he finished vandalizing the Toyota. Jordan contends there was insufficient evidence that the force he used was likely to produce great bodily injury. We disagree.

#### A. Standard of Review

When evaluating a sufficiency of evidence claim, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses . . . evidence that is reasonable, credible, and of solid value . . . from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "The test for evaluating a sufficiency of evidence claim is deferential." (*People v. Flores* (2020) 9 Cal.5th 371, 411.) "We must presume in support of the judgment the existence of every

---

[3] Upon the prosecutor's request for clarification, the trial court stated the sentences for "count 1 and 3" "are consecutive for a total of five years." Count 1 (GBI assault) and count 3 (felony vandalism) carried an aggregate sentence of one year eight months, so it appears the court was referring to count 1 (GBI assault) and count 4 (assault with a deadly weapon). The court did not address different treatment for count 3 (felony vandalism). The abstract of judgment reflects all sentences are to be served consecutively with none stayed under section 654 for a total of five years eight months.

fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Flores*, *supra*, at p. 411.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, *supra*, at p. 508.)

### B.    Force Likely to Produce Great Bodily Injury

" 'Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citations.]' [Citations.] In other words, it is significant or substantial physical injury that is more than minor or moderate." (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361.)

In evaluating whether a defendant used force likely to produce great bodily injury, the proper focus is on the force actually used, not the force the defendant was capable of using. (*People v. Duke* (1985) 174 Cal.App.3d 296, 303 (*Duke*).) But "[a] person can be guilty of an aggravated assault despite causing no injury so long as his actions made a serious injury *likely*." (*People v. Drayton* (2019) 42 Cal.App.5th 612, 617.)

### C.    Analysis

The People's theory of great bodily injury risk was that Jordan used enough force to throw Yvonne to the ground but she avoided injury only through her resistance. It is well established that throwing a person to the ground can create the risk of great bodily injury from colliding with the ground or another hard object. (See, e.g., *People v. Conley* (1952) 110 Cal.App.2d 731, 733 [the defendant "pushed or shoved [the victim] with such force that he struck his head against the parking meter and fell to the sidewalk"]; *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161–

1162 [the defendant knocked victim to the ground with a single blow]; see also *People v. Clark* (2011) 201 Cal.App.4th 235, 246 [applying § 273a, "it is common knowledge that falling to the ground as the result of an unexpected tripping creates a substantial danger of broken bones, torn ligaments or other injuries"].)

We conclude substantial evidence supports the jury's findings. Specifically, there was evidence that Yvonne managed to stay upright only by her defensive measures. She testified that she "fe[lt] like [she] had to stop him physically from tossing [her] down" and "tr[ied] to keep [her]self from going down" by "kind of turn[ing] or push[ing] away from him." In short, she "just tried to stay upright."

From this testimony, the jury could reasonably have found Jordan's force would have been sufficient to topple Yvonne but for her defensive efforts. Our Supreme Court has made clear that "an aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure" in ascertaining whether the aggressor's conduct was likely to cause injury. (*In re B.M.* (2018) 6 Cal.5th 528, 537 [applying § 245, subd. (a)(1)].)

*Duke*, on which Jordan primarily relies to show insufficiency of the evidence, is distinguishable in this respect. Duke committed a series of assaults, only one of which is relevant here: he used "a headlock to hold his victim while he touched her breast. The headlock made her feel 'choked' but did not cut off her breathing. She could still scream, and she did get away. The victim did not describe an attempt to choke or strangle her. [The victim's] only actual injury was a laceration to her ear lobe caused by her earring being pushed against her ear. She felt that his hold on her was 'firm,' but did not say that he tightened his

grip." (*Duke, supra,* 174 Cal.App.3d at p. 302.) The *Duke* court found this evidence insufficient to show force likely to produce great bodily injury. But there was no testimony that the perpetrator used significant force but that the victim, as Yvonne did here, asserted a countervailing force against Duke's grip to protect herself from being seriously injured. (*Ibid.*) Duke subjected his victim to a relatively unharmful headlock when there was nothing to impede him from choking her.

Here, viewing the evidence most favorably to the verdict, Yvonne fought to stay upright while Jordan tried to knock her to the ground. Though Yvonne managed to stay upright, Jordan still "moved" her against her will and ultimately pushed her into a metal fence with enough force to cut her arms. The jury could reasonably find that, if she had not struggled against Jordan's force, she would have fallen, subjecting her to the likelihood of serious injuries.

## II. The Trial Court Should Have Instructed the Jury on Simple Assault and Jordan Was Prejudiced by Its Omission

Even though substantial evidence supported Jordan's conviction for assault with force likely to produce great bodily harm, Jordan argues the trial court erred in failing to instruct on misdemeanor simple assault (§ 240). Simple assault is a lesser included offense of the assault for which he was convicted (*People v. Rupert* (1971) 20 Cal.App.3d 961, 968 (*Rupert*)), comprising all the same elements but without force likely to produce great bodily harm. We agree the trial court should have instructed the jury on simple assault and that there was a reasonable probability he would have been convicted only for the lesser offense.

9

### A.    Standard of Review

We independently review whether an instruction on a lesser included offense should have been given. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

### B.    The Trial Court's Obligation to Instruct on a Lesser Included Offense

"In a criminal case, a trial court must instruct on general principles of law relevant to the issues raised by the evidence, even absent a request for such instruction from the parties.[4] [Citation.] The obligation extends to instruction on lesser included offenses when the evidence raises a question as to whether all the elements of the charged offense were present, but not when there is no evidence that the offense committed was less than that charged." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.) Put another way, the trial court must instruct on the lesser included offense if there is " ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*Ibid.*) " 'The rule's purpose is . . . to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403–404.)

### C.    Analysis

The trial court erred in failing to instruct on simple assault. We have been cited no case in which a defendant was convicted of GBI assault where the risk of great bodily injury arose from

---

[4]    Because the trial court is obligated to act sua sponte, the People's contention that Jordan waived this argument by failing to raise it below is meritless. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 33, fn. 6.)

pushing that might have, but did not actually cause, an ordinary fall. In order to convict Jordan of felony assault for his tussle with Yvonne, the jury had to infer that, but for Yvonne's limited defensive measures, the force he applied would have been enough to knock her down, and, further, that if she were knocked down, she was likely to sustain a serious injury. That a reasonable juror might not have reached that conclusion on the evidence presented required a simple assault instruction.

When Jordan initially started grabbing Yvonne, it did not hurt. Yvonne was not scared by his actions, only concerned and shocked that her son would behave that way towards her. At one point, she felt a "burning" sensation on her arm—a description more consistent with friction from a sliding or twisting grasp than a shove. In the end, she sustained only scrapes from being pushed into the fence. While actual injury is not necessary to support a conviction for GBI assault, the absence of an injury militates in favor of finding no such force was used. (See *People v. Muir* (1966) 244 Cal.App.2d 598, 604 ["the results of an assault are often highly probative of the amount of force used"].)

This is particularly true in this case. Jordan is a man in his 30's, who jurors could observe was nearly six feet tall and weighed 175 pounds. In contrast, Yvonne is a woman in her 60's and eight inches shorter. A juror could reasonably have concluded that if Jordan wanted to knock her over, he would have. As Jordan argued in his closing statement, "[i]f I wanted to slam her down, I could have. That's not my intention."[5] Moreover, the

---

[5]     Jordan's closing arguments are relevant to our prejudice analysis, which we turn to next. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.)

11

record contained good reasons for him to avoid knocking her down, with its attendant risk of serious injury. Yvonne is Jordan's mother and the caretaker for two of his children. Again, Jordan argued this point, asking the jury "why would I put a person responsible for my children that I love with all my heart in a position to where she can't tend for them?" A juror could reasonably conclude he refrained from exerting dangerous force against her because of these familial considerations.

Finally, a juror could reasonably conclude that, even if Jordan used enough force to push, and successfully pushed, Yvonne down, she was not likely to sustain serious injuries. Although she was 62 years old, photographs in evidence do not suggest any frailty. Indeed, the evidence is that she worked as a security officer at a bank and was largely successful in managing the force Jordan exerted against her.

*Rupert* illustrates the clarity of the error here. In that case, Rupert was attacking the victim's mother. The victim tried to intervene. Rupert hit her with his hand (and possibly a coffee pot) at least five times, knocking her to the bedroom floor. (*Rupert*, *supra*, 20 Cal.App.3d at pp. 966, 968.) He continued to strike her when she was on the floor. (*Id.* at p. 966.) She sustained a concussion and multiple facial lacerations, including at least one that left a permanent scar. (*Ibid.*) The jury convicted Rupert of GBI assault but was not given the option to convict for simple assault. The Court of Appeal found this was error and reversed the felony conviction on that basis. (*Id.* at p. 969.) Since a simple assault instruction was required in *Rupert*, despite the victim *actually* being knocked down and *actually* sustaining material injuries to her head and face, it was required here, where the

tussle did not cause Yvonne to fall and resulted in only scraped elbows.

*People v. Roth* (1964) 228 Cal.App.2d 522 (*Roth*) is similarly instructive as it involved a manual assault yielding no serious injuries. Roth was charged with, among other offenses, GBI assault on a man he and another defendant encountered sleeping on a beach. Roth first "seiz[ed] [the victim] by the throat." (*Id.* at p. 524.) He also "hit[] and kick[ed] [the victim] [while] [he] was down on the sand." (*Id.* at p. 525.) The jury convicted Roth of GBI assault, but the Court of Appeal reversed. It explained: "This case is one in which an instruction on simple assault would have been particularly appropriate. The assault . . . was with hands, fists, and feet, and [the victim] suffered no bodily injury other than a cut mouth and some bruises. It is of course unnecessary for the prosecution to show that the victim actually received injuries in order to support a conviction [citation], but the absence of serious injuries is a factor which the jury might consider in determining what kind of force was used." (*Id.* at pp. 530–531.)

Our finding of error does not, however, end the inquiry. "In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818[,] which requires reversal of the conviction for the greater offense 'if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' [Citation.] Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335 (*Racy*).) "[I]n assessing prejudice, it does not matter that the jury chose to convict the

13

defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence." (*Ibid*.) We find Jordan was prejudiced.

The *Rupert* court did not explicitly address prejudice but reversed the GBI assault conviction for failure to instruct on simple assault. (*Rupert*, *supra*, 20 Cal.App.3d at p. 969.) The *Roth* court found prejudice as follows: "It seems hardly probable that a jury, after hearing all of the evidence . . . , would ever have acquitted defendant, but it is not improbable that a jury would have found the offense to be a simple assault if the instructions had permitted it." (*Roth*, *supra*, 228 Cal.App.2d at p. 531.) After all, "it was purely a matter of inference whether the assault was of the severity contemplated by . . . section 245, or the simple misdemeanor referred to in section 240 . . . ." (*Ibid*.)

The more recent decision in *Racy* further supports our finding of prejudice. *Racy* involved a conviction for felony elder abuse (§ 368, subd. (b)(1)). (*Racy*, *supra*, 148 Cal.App.4th at pp. 1331–1332.) Felony elder abuse is differentiated from the lesser included offense of misdemeanor abuse by the requirement that the defendant harmed the elder "under circumstances or conditions likely to produce great bodily harm or death." (Compare § 368, subd. (b)(1) with § 368, subd. (c)(1); see also *Racy*, *supra*, at pp. 1334–1335.) Notably, the "circumstances or conditions likely to produce great bodily harm or death" element in section 368, subdivision (b)(1) is similar to, but less stringent than, the "force likely to produce great bodily injury" element of felony assault in section 245, subdivision (a)(2). (See *People v. Clark* (2011) 201 Cal.App.4th 235, 252 ["There is nothing inconsistent about the jury determining the evidence of force likely to cause great bodily injury was insufficient on the felony

14

assault count, but at the same time finding that the totality of the circumstances and conditions were likely to produce great bodily harm."].)**[6]**

The *Racy* court found Racy was prejudiced by the trial court's failure to instruct on misdemeanor elder abuse under the facts of an assault bearing significant parallels to those presented here. The 25-year-old Racy attacked a 74-year-old victim—whose knee condition prevented him from running—for his wallet. He first " 'zapped' [the victim] in the leg with a stun gun." (*Racy*, *supra*, 148 Cal.App.4th at p. 1330.) When the victim retreated to a bedroom, Racy followed him so closely that he could not close the door. Racy yanked the phone cord from the wall when the victim tried to call for help, leaving the victim to cower on the bed in a defensive position. "For the next 10 minutes, [Racy] asked [the victim] for money while he 'zapped' the stun gun . . . 'in the air.' [Racy] then 'tip[ped] [the victim] over,' exposing his wallet. [The victim] tried unsuccessfully to fight off [the] defendant. The struggle moved the bed approximately one foot away from the wall. [Racy] grabbed [the victim's] wallet, tearing [his] jeans pocket. At some point during the struggle, [the victim] 'tripped.' [Racy] then ran out of the house." (*Id.* at p. 1331.)

While the *Racy* court found substantial evidence supported the jury's conclusion that Racy was guilty of felony elder abuse, it still concluded the trial court prejudicially erred in omitting an instruction on misdemeanor elder abuse. It explained: "[The victim] did not suffer great bodily harm during the incident, so

---

**[6]**     *Clark* involved a child abuse statute containing the same "circumstances and conditions" element and after which the elder abuse statute was modeled. (See *Clark*, *supra*, 201 Cal.App.4th at p. 243, fn. 5.)

15

the jury was left to draw inferences about whether the circumstances or conditions under which [Racy] inflicted physical pain or mental suffering were likely to produce great bodily harm or death. . . . [T]he evidence supporting the guilty verdict of felony elder abuse was not so compelling that the jury instead could have reasonably reached a guilty verdict of misdemeanor elder abuse." (*Racy*, *supra*, 148 Cal.App.4th at pp. 1335–1336, citation omitted.)

The same can be said of the force Jordan used in assaulting Yvonne here. Based on the evidence already discussed, the jury was left to draw inferences about the degree and nature of the force Jordan exerted. There is at least a " 'mere[] . . . reasonable chance,' " and certainly more than an " 'abstract possibility' " (*Racy*, *supra*, 148 Cal.App.4th at p. 1335), that at least one juror would have voted to acquit Jordan of felony assault if offered simple assault as an alternative. (See *People v. Hendrix* (2022) 13 Cal.5th 933, 947, fn. 6 [a hung jury is a " 'more favorable' " outcome for purposes of harmless error review under *Watson*].)

## III. Section 654 Applies to Jordan's Convictions for Assault with a Deadly Weapon and Vandalism

Jordan contends[7] he was erroneously punished for each of his three convictions because section 654 permits punishment for just one. We conclude section 654 applies to two (assault with a deadly weapon and vandalism), but not all three, of his convictions.

---

[7] That Jordan failed to raise this issue, too, below is no bar to considering it on appeal. (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1004, fn. 2.)

16

### A. Standard of Review

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

### B. Section 654

By its terms, section 654 permits just one punishment for "[a]n act or omission that is punishable in different ways by different provisions of law." (§ 654, subd. (a).) But "[b]ecause '[f]ew if any crimes . . . are the result of a single physical act,' section 654 applies not just to a single ' " 'act' in the ordinary sense . . . but also where a course of conduct violate[s] more than one statute . . . .' ' [Citation.] 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 853–854.) "If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267–268 (*Cleveland*).)

17

The proper procedure is to sentence the defendant for each count but stay execution of the sentence on the lesser conviction to which section 654 applies. (*People v. Jones* (2012) 54 Cal.4th 350, 353; see also *People v. Beamon* (1973) 8 Cal.3d 625, 639–640 [the defendant's sentence on the lesser punishment to be stayed].)

### C. Analysis

We conclude two of the counts here arise from a single course of conduct, punishable by more than one statute. Jordan, in a fit of rage, committed felony vandalism by throwing bricks at the Toyota's windows. When one of those bricks skipped off the back window and flew past Yvonne's head, he also committed assault with a deadly weapon. However, there is no indication that the brick which skipped off the window was intended to do anything but damage the car. Despite having access to several bricks, he never threw a brick directly at Yvonne. No facts support punishing these offenses separately. On remand, the trial court shall select just one permissible punishment for them.

But we reject Jordan's contention that the subsequent assault on Yvonne was part of the same conduct as the vandalism of the vehicle, described by Jordan as all being acts in furtherance of a solitary criminal plan to get the key from Yvonne. Substantial evidence supports the implied finding that Jordan's vandalism and assault with a deadly weapon conduct were perpetrated out of anger and to punish Yvonne, whereas his GBI assault was motivated by an attempt to get the key. (See *Cleveland*, *supra*, 87 Cal.App.4th at pp. 271–272 [evidence that recent interactions with the victim had angered the defendant supported finding of separate intents for attempted murder and robbery].)

The argument that Jordan's conduct in throwing bricks at the car was incident to obtaining the key is speculative. Jordan did not threaten to break the Toyota's windows unless Yvonne gave up the key, nor did he offer to stop breaking the windows if she did. After being refused the key yet again, he simply started breaking windows without saying another word. When Yvonne implored him to stop, he ignored her. Only after he broke all of the windows was his vandalistic rage quelled and he returned to the topic of the keys.

The absence of any logical connection between the vandalism and an effort to obtain the keys distinguishes this case from *People v. Chacon* (1995) 37 Cal.App.4th 52. There, the defendants, inmates at a California Youth Authority facility, committed a series of offenses as part of a plot to escape. These included assaults on a female staffer they had taken hostage from ransom: a pickup truck to aid their escape. The *Chacon* court found the assaults were a means of obtaining the truck. (*Id.* at p. 66.) The defendants first "threatened to 'kill the bitch' if the truck was not delivered." (*Id.* at p. 58.) When staff members tried to reason with them, one defendant applied pressure to the victim's neck until she passed out and the other stabbed her in the stomach. They then reiterated their threat "to 'kill the bitch' if the truck was not delivered" while one held a shank to her eye and started counting down from 10. (*Ibid.*) Staff members promptly furnished the truck.

As the evidence does not compel the conclusion that Jordan's acts relative to the Toyota (vandalism and assault with a deadly weapon) were part of an indivisible course of conduct with the subsequent tussle for the key, Jordan's conviction for GBI assault is separately punishable from the others.

19

## DISPOSITION

Jordan's conviction for assault with force likely to produce great bodily harm (§ 245, subd. (a)(4); count 1) is reversed for failure to instruct on the lesser included offense of simple assault (§ 240). If, after the filing of the remittitur in the trial court, the People do not retry Jordan on count 1 within the time limit set forth in section 1382, subdivision (a)(2)—60 days unless waived by Jordan—the trial court shall treat the remittitur as a modification of the judgment as to count 1 to reflect a conviction for misdemeanor simple assault (§ 240), and resentence Jordan accordingly. (*People v. Woods* (1992) 8 Cal.App.4th 1570, 1596.) In addition, the trial court shall resentence Jordan for his convictions for assault with a deadly weapon (§ 245, subd. (a)(1); count 4) and felony vandalism (§ 594, subd. (b)(1); count 3), staying execution of the lesser conviction (§ 654).

RICHARDSON, J.

I CONCUR:

GOORVITCH, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**People v. Jordan**
**B340243**

**Chavez, Acting P. J., Concurring and dissenting**

I respectfully dissent from the majority's harmless error analysis as to count 1 and its application of Penal Code section 654.[1]  I concur in all other respects.

## I.    Failure to instruct regarding the lesser included offense, if error, was harmless

"In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818[,] which requires reversal of the conviction for the greater offense 'if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' [Citation.] Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.'" (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.)

The question posed here is whether it is reasonably probable the jury could have found defendant committed only a simple assault and not an assault with force likely to produce great bodily injury (GBI).  The answer is no; it is not reasonably probable the jury would have reached a more favorable outcome.

First, the majority minimizes the size disparity between defendant and Yvonne: defendant is a six-foot tall, 32-year-old male, while 62-year-old Yvonne stood five feet three inches tall.

---

[1]    All further unattributed statutory references are to the Penal Code.

1

Second, the majority fails to consider the escalating tensions of the entire afternoon. Before he broke all the windows of the Toyota, threw a brick that narrowly missed Yvonne's head, and physically assaulted her, defendant was initially angry Yvonne would not let him in the house. He stood outside yelling, "come open the door before I bang the door in" and "open the door. I'm gonna break the window. Come open the door before I mess up the house."

Third, even after Destiny separated the pair, defendant continued to "come at her . . . trying to get the keys." "[Defendant] stuck his hands in [Yvonne's] pocket[s], ripped [the] pockets,[2] took the keys, and proceeded to walk away."

Defendant was angry and frustrated his mother would not engage with him and/or give him the keys to a car. As Yvonne continued to refuse his requests, defendant became angrier, working to break each and every window of the Toyota as Yvonne begged him to stop. To break the final window, he lobbed a five-pound, foot-long landscaping brick in his mother's direction, which, the evidence suggests, would have hit her if she had not ducked—the brick only missed her by four to six inches.

Defendant grew angrier still when Yvonne walked over to the alley to get help and avoid further contact with him. He grabbed her arms with two hands and tried to "sling her [to] the ground." But for her evasive movements, she would have been thrown down to the concrete. There is little doubt that being

---

[2]     People's exhibits 8A and 8B were published to the jury, which showed defendant pulled Yvonne's pants with great force. While her belt was intact around her waist, her pants were ripped on both sides from the waist down to her knees exposing her tucked in shirt and her legs.

2

thrown down on concrete is likely to cause great bodily injury. The fact that she was able to stay on her feet and was, instead, *only* pushed into the metal gate and *only* sustained minor scrapes is of no moment. (See *People v. Drayton* (2019) 42 Cal.App.5th 612, 617 ["[a] person can be guilty of an aggravated assault despite causing no injury so long as his actions made a serious injury *likely*"].)

The majority points to defendant's professed "intention" as evidence that "if [he] wanted to knock her over, he would have." This, the force he was *capable* of using, is not the standard. (See *People v. Duke* (1985) 174 Cal.App.3d 296, 303 [the proper focus is on the force actually used, not the force the defendant could have used].) The force defendant "actually used" was enough to slam Yvonne into the metal fence causing scrapes and broken skin. This is enough force to have caused her to hit the concrete hard enough to cause broken bones, head trauma or other serious injury. That Yvonne was quick enough to twist and turn in a way to instead be thrown into the fence does not turn this GBI assault into a simple assault. (See *People v. Wingo* (1975) 14 Cal.3d 169, 176 ["since the statute focuses on force *likely* to produce harm, it is immaterial that the force actually resulted in no harm whatever"].)

Assuming, only for the sake of argument, there was evidence "'substantial enough to merit consideration' by the jury," it is not reasonably probable the jury would have convicted defendant of simple assault. (*People v. Breverman* (1998) 19 Cal.4th 142, 162, disapproved of on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237; see *People v. Avila* (2009) 46 Cal.4th 680, 705.) Therefore, any error in failing to instruct on simple assault was harmless.

3

## II. Application of section 654 to counts 3 and 4

The majority errs in applying section 654 because defendant had multiple, simultaneous objectives. The law requires application of section 654 "[i]f all of the offenses were incident to one objective" (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 853) but not if "the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267).

Defendant had multiple and simultaneous objectives when he threw the final brick. As discussed, as the afternoon wore on, defendant became angrier and more agitated. He was angry and threatening to "bang the door in," "break the window," and "mess up the house" because he was not allowed entry into the home; when Yvonne came outside to leave for work, defendant took bricks and "smashed" each of the windows of the Toyota because she would not give him the keys to a car; and, before physically assaulting her, defendant lobbed a brick in the direction of the rear window and Yvonne. Based on the facts adduced at trial, defendant had *at least* two objectives when he threw the brick: to get the keys to a car and break the last window of the Toyota— the car he believed to be Yvonne's.[3] Thus, "defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an

---

[3] The evidence supports finding defendant also harbored a desire to hurt Yvonne because he was angry with her. In his interview with police, defendant said he was "fed up" and angry Yvonne "d[id]n't want [him] there" and, according to him, was "keep[ing] all [his] things." He believed she "stole [his] car" and "owe[d] [him] money."

4

otherwise indivisible course of conduct." (*People v. Cleveland, supra*, 87 Cal.App.4th at pp. 267–268.)


CHAVEZ, Acting P. J.